DocuSign Envelope ID: 07F6979E-06E3-4F7A-81DC-1A94DB279A85

© Commercial Brokers Association
2011
ALL RIGHTS RESERVED

CBA Form PS_1A
Purchase & Sale Agreement
Rev. 1/2011
Page 1 of 13



# COMMERCIAL & INVESTMENT REAL ESTATE
# PURCHASE & SALE AGREEMENT

*This has been prepared for submission to your attorney for review and approval prior to signing. No representation is made by licensee as to its sufficiency or tax consequences*

Reference Date: <u>May 11, 2015</u>

<u>Low Income Housing Institute (LIHI), a Washington non-profit corporation</u>
("Buyer") agrees to buy and
<u>Recovery Center of King County</u>
("Seller") agrees to sell, on the following terms, the commercial real estate and all improvements thereon (collectively, the "Property") commonly known as <u>464 12th Avenue, Seattle, WA 98122</u>
in the City of <u>Seattle</u>, <u>King</u> County, Washington, legally described on attached Exhibit A. The Reference Date above is intended to be used to reference this Agreement, and is not the date of "Mutual Acceptance." Mutual Acceptance is defined in Section 23 below.

1. **PURCHASE PRICE.** The total purchase price is <u>Four Million, One Hundred Thousand</u> Dollars ($<u>4,100,000.00</u>) payable as follows (check only one):

   ☐ All cash at closing with no financing contingency.

   ☒ All cash at closing contingent on new financing in accordance with the Financing Addendum (attach CBA Form PS_FIN).

   ☐ $_____ OR _____% of the purchase price in cash at closing with the balance of the purchase price paid as follows **(check one or both, as applicable):** ☐ Buyer's assumption of the outstanding principal balance as of the Closing Date of a first lien note and deed of trust (or mortgage), or real estate contract, in accordance with the Financing Addendum (attach CBA Form PS_FIN); ☐ Buyer's delivery at closing of a promissory note for the balance of the purchase price, secured by a deed of trust encumbering the Property, in accordance with the Financing Addendum (attach CBA Form PS_FIN).

   ☐ Other: _____.

2. **EARNEST MONEY.** The earnest money in the amount of $<u>100,000.00</u> shall be in the form of ☐ Cash ☐ Personal check ☒ Promissory note (attached CBA Form EMN) ☐ Other: _____

   The earnest money shall be held by ☐ Selling Firm ☒ Closing Agent. Selling Broker may, however, transfer the earnest money to Closing Agent.

   Buyer shall deliver the earnest money no later than:
   ☐ _____ days after Mutual Acceptance.
   ☐ On the last day of the Feasibility Period defined in Section 5 below.
   ☒ Other: <u>Upon signature hereto. See attached Addendum/Amendment Agreement.</u>

   If the earnest money is to be held by Selling Firm and is over $10,000, it shall be deposited to: ☐ Selling Firm's pooled trust account (with interest paid to the State Treasurer) ☐ A separate interest bearing trust account in Selling Firm's name. The interest, if any, shall be credited at closing to Buyer. If this sale fails to close, whoever is entitled to the earnest money is entitled to interest.

   Selling Firm shall deposit any check to be held by Selling Firm within 3 days after receipt or Mutual Acceptance, whichever occurs later. Buyer agrees to pay financing and purchase costs incurred by Buyer. Unless otherwise provided in this Agreement, the earnest money shall be applicable to the purchase price.

3. **EXHIBITS AND ADDENDA.** The following Exhibits and Addenda are made a part of this Agreement:
   ☒ Exhibit A - Legal Description
   ☒ Earnest Money Promissory Note, CBA Form EMN

INITIALS: BUYER <u>SL</u> DATE <u>5/11/2015</u> SELLER <u>CW</u> DATE <u>5/13/15</u>
BUYER _____ DATE _____ SELLER _____ DATE _____

James Tjoa & Associates, 2312 Eastlake Ave E Seattle, WA 98102 Phone: (206)726-6229 Fax: (206)323-7576 464 12th Avenue PSA -
Megan Collier Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

Case 15-13060-TWD    Doc 26-1    Filed 05/29/15    Ent. 05/29/15 11:13:52    Pg. 1 of 20

DocuSign Envelope ID: 07F6979E-06E3-4F7A-81DC-1A94DB279A85

© Commercial Brokers Association
2011
ALL RIGHTS RESERVED 

CBA Form PS_1A
Purchase & Sale Agreement
Rev. 1/2011
Page 2 of 13

## COMMERCIAL & INVESTMENT REAL ESTATE
## PURCHASE & SALE AGREEMENT
## (CONTINUED)

- [ ] Promissory Note, LPB Form No. 28A
- [ ] Short Form Deed of Trust, LPB Form No. 20
- [ ] Deed of Trust Rider, CBA Form DTR
- [x] Utility Charges Addendum, CBA Form UA
- [ ] FIRPTA Certification, CBA Form 22E
- [ ] Assignment and Assumption, CBA Form PS-AS
- [x] Addendum/Amendment, CBA Form PSA
- [ ] Back-Up Addendum, CBA Form BUA
- [ ] Vacant Land Addendum, CBA Form VLA
- [x] Financing Addendum, CBA Form PS_FIN
- [ ] Tenant Estoppel Certificate, CBA Form PS_TEC
- [ ] Defeasance Addendum, CBA Form PS_D
- [ ] Other _____

4. **SELLER'S UNDERLYING FINANCING.** Unless Buyer is assuming Seller's underlying financing, Seller shall be responsible for confirming the existing underlying financing is not subject to any "lock out" or similar covenant which would prevent the lender's lien from being released at closing. In addition, Seller shall provide Buyer notice prior to the end of the Feasibility Period if Seller is required to substitute securities for the Property as collateral for the underlying financing (known as "defeasance"). If Seller provides this notice of defeasance to Buyer, then the parties shall close the transaction in accordance with the process described in CBA Form PS_D or any different process identified in Seller's defeasance notice to Buyer.

5. **FEASIBILITY CONTINGENCY.** Buyer's obligations under this Agreement are conditioned upon Buyer's satisfaction in Buyer's sole discretion, concerning all aspects of the Property, including its physical condition; the presence of or absence of any hazardous substances; the contracts and leases affecting the property; the potential financial performance of the Property; the availability of government permits and approvals; and the feasibility of the Property for Buyer's intended purpose. This Agreement shall terminate and Buyer shall receive a refund of the earnest money unless Buyer gives written notice to Seller within __30__ days (30 days if not filled in) (the "Feasibility Period") of Mutual Acceptance stating that this condition is satisfied. If such notice is timely given, the feasibility contingency stated in this Section 5 shall be deemed to be satisfied.

    a. **Books, Records, Leases, Agreements.** Seller shall make available for inspection by Buyer and its agents within __2__ days (2 days if not filled in) after Mutual Acceptance all documents in Seller's possession or control relating to the ownership, operation, renovation or development of the Property, excluding appraisals or other statements of value, and including: statements for real estate taxes, assessments, and utilities for the last three years and year to date; property management agreements and any other agreements with professionals or consultants; leases or agreements relating to occupancy of all or a portion of the Property and a suite-by-suite schedule of tenants, rents, prepaid rents, deposits and fees; plans, specifications, permits, applications, drawings, surveys, and studies; maintenance records, accounting records and audit reports for the last three years and year to date; and "Vendor Contracts" which shall include maintenance or service contracts, and installments purchase contracts or leases of personal property or fixtures used in connection with the Property. Buyer shall determine within the Feasibility Period: (i) whether Seller will agree to terminate any objectionable Vendor Contracts; and (ii) whether Seller will agree to pay any damages or penalties resulting from the termination of objectionable Vendor Contracts. Buyer's waiver of the Feasibility Contingency shall be deemed Buyer's acceptance of all Vendor Contracts which Seller has not agreed in writing to terminate. Buyer shall be solely responsible for obtaining any required consents to such assumption

INITIALS: BUYER _SL_ DATE _5/11/2015_ SELLER _CA_ DATE _5/13/15_
BUYER _____ DATE _____ SELLER _____ DATE _____

DocuSign Envelope ID: 07F6979E-06E3-4F7A-81DC-1A94DB279A85

© Commercial Brokers Association
2011
ALL RIGHTS RESERVED 

CBA Form PS_1A
Purchase & Sale Agreement
Rev. 1/2011
Page 3 of 13

## COMMERCIAL & INVESTMENT REAL ESTATE
## PURCHASE & SALE AGREEMENT
### (CONTINUED)

and the payment of any assumption fees. Seller shall cooperate with Buyer's efforts to receive any such consents but shall not be required to incur any out-of-pocket expenses or liability in doing so. Seller shall transfer the Vendor Contracts as provided in Section 17.

b. **Access.** Seller shall permit Buyer and its agents, at Buyer's sole expense and risk to enter the Property at reasonable times subject to the rights of and after legal notice to tenants, to conduct inspections concerning the Property and improvements, including without limitation, the structural condition of improvements, hazardous materials, pest infestation, soils conditions, sensitive areas, wetlands, or other matters affecting the feasibility of the Property for Buyer's intended use. Buyer shall schedule any entry onto the Property with Seller in advance and shall comply with Seller's reasonable requirements including those relating to security, confidentiality, and disruption of Seller's tenants. Buyer shall not perform any invasive testing including environmental inspections beyond a phase I assessment or contact the tenants or property management personnel without obtaining the Seller's prior written consent, which shall not be unreasonably withheld. Buyer shall restore the Property and improvements to the same condition they were in prior to inspection. Buyer shall be solely responsible for all costs of its inspections and feasibility analysis and has no authority to bind the Property for purposes of statutory liens. Buyer agrees to indemnify and defend Seller from all liens, costs, claims, and expenses, including attorneys' and experts' fees, arising from or relating to entry onto or inspection of the Property by Buyer and its agents. This agreement to indemnify and defend Seller shall survive closing. Buyer may continue to enter the Property in accordance with the foregoing terms and conditions after removal or satisfaction of the feasibility contingency only for the purpose of leasing or to satisfy conditions of financing.

c. Buyer waives the right to receive a seller disclosure statement ("Form 17-Commercial") if required by RCW 64.06. However, if Seller would otherwise be required to provide Buyer with a Form 17-Commercial, and if the answer to any of the questions in the section of the Form 17-Commercial entitled "Environmental" would be "yes," then Buyer does not waive the receipt of the "Environmental" section of the Form 17-Commercial which shall be provided by Seller.

6. **TITLE INSURANCE.**

   a. **Title Report.** Seller authorizes Buyer, its Lender, Listing Broker, Selling Broker or Closing Agent, at Seller's expense, to apply for and deliver to Buyer a ☐ standard ☒ extended (standard, if not completed) coverage owner's policy of title insurance. If an extended coverage owner's policy is specified, Buyer shall pay the increased costs associated with that policy including the excess premium over that charged for a standard coverage policy, and the cost of any survey required by the title insurer. The title report shall be issued by _____ Chicago Title of Washington _____ (a title company of Seller's choice, if not completed). If Seller previously received a preliminary commitment from a title insurer that Buyer declines to use, Buyer shall pay any cancellation fee owing to the original title insurer. Otherwise, the party applying for title insurance shall pay any title cancellation fee, in the event such a fee is assessed.

   b. **Permitted Exceptions.** Buyer shall notify Seller of any objectionable matters in the title report or any supplemental report within the earlier of: (1) twenty (20) days after Mutual Acceptance of this Agreement; or (2) the expiration of the Feasibility Period. This Agreement shall terminate and Buyer shall receive a refund of the earnest money, less any costs advanced or committed for Buyer, unless within five (5) days of Buyer's notice of such objections (1) Seller agrees, in writing, to remove all objectionable provisions or (2) Buyer notifies Seller that Buyer waives any objections which Seller does not agree to remove. If any new title matters are disclosed in a supplemental title report, then the preceding termination, objection and waiver provisions shall apply to the new title matters except that Buyer's notice of objections must be delivered within five (5) days of delivery of the supplemental report and Seller's response or Buyer's waiver must be delivered within two (2) days of Buyer's notice of objections. The closing date shall be extended to the extent necessary to

INITIALS: BUYER SL DATE 5/11/2015 SELLER DA DATE 5/13/15
BUYER _____ DATE _____ SELLER _____ DATE _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

464 12th Avenue

DocuSign Envelope ID: 07F6979E-06E3-4F7A-81DC-1A94DB279A85

© Commercial Brokers Association
2011
ALL RIGHTS RESERVED 

CBA Form PS_1A
Purchase & Sale Agreement
Rev. 1/2011
Page 4 of 13

# COMMERCIAL & INVESTMENT REAL ESTATE
# PURCHASE & SALE AGREEMENT
# (CONTINUED)

permit time for these notices. Buyer shall not be required to object to any mortgage or deed of trust liens, or the statutory lien for real property taxes, and the same shall not be deemed to be Permitted Exceptions; provided, however, that the lien securing any financing which Buyer has agreed to assume shall be a Permitted Exception. Except for the foregoing, those provisions not objected to or for which Buyer waived its objections shall be referred to collectively as the "Permitted Exceptions." Seller shall cooperate with Buyer and the title company to clear objectionable title matters but shall not be required to incur any out-of-pocket expenses or liability other than payment of monetary encumbrances not assumed by Buyer and proration of real property taxes, and Seller shall provide an owner's affidavit containing the information and reasonable covenants requested by the title company. The title policy shall contain no exceptions other than the General Exclusions and Exceptions common to such form of policy and the Permitted Exceptions.

7. **CLOSING OF SALE.** This sale shall be closed on _____ or before August 3, 2015 _____ ("Closing") by _____ Chicago Title of Washington _____ ("Closing Agent") (Seller shall select the Closing Agent, if not completed). Buyer and Seller shall deposit with Closing Agent by 12:00 p.m. on the scheduled Closing date all instruments and monies required to complete the purchase in accordance with this Agreement. "Closing" shall be deemed to have occurred when the deed is recorded and the sale proceeds are available to Seller. Time is of the essence in the performance of this Agreement. Sale proceeds shall be considered available to Seller, even though they cannot be disbursed to Seller until the next business day after Closing. Notwithstanding the foregoing, if Seller informed Buyer during the Feasibility Period that Seller's underlying financing requires that it be defeased and may not be paid off, then Closing shall be conducted in accordance with the three-day closing process described in CBA Form PS_D. This Agreement is intended to constitute escrow instructions to Closing Agent. Buyer and Seller will provide any supplemental instructions requested by Closing Agent provided the same are consistent with this Agreement.

8. **CLOSING COSTS AND PRORATIONS.** Seller shall deliver an updated rent roll to Closing Agent not later than two (2) days before the scheduled Closing date in the form required by Section 5(a) and any other information reasonably requested by Closing Agent to allow Closing Agent to prepare a settlement statement for Closing. Seller certifies that the information contained in the rent roll is correct as of the date submitted. Seller shall pay the premium for the owner's standard coverage title policy. Buyer shall pay the excess premium attributable to any extended coverage or endorsements requested by Buyer, and the cost of any survey required in connection with the same. Seller and Buyer shall each pay one-half of the escrow fees. Any real estate excise taxes shall be paid by the party who bears primary responsibility for payment under the applicable statute or code. Real and personal property taxes and assessments payable in the year of closing; collected rents on any existing tenancies; interest; utilities; and other operating expenses shall be pro-rated as of Closing. If tenants pay any of the foregoing expenses directly, then Closing Agent shall only pro rate those expenses paid by Seller. Buyer shall pay to Seller at Closing an additional sum equal to any utility deposits or mortgage reserves for assumed financing for which Buyer receives the benefit after Closing. Buyer shall pay all costs of financing including the premium for the lender's title policy. If the Property was taxed under a deferred classification prior to Closing, then Seller shall pay all taxes, interest, penalties, deferred taxes or similar items which result from removal of the Property from the deferred classification. At Closing, all refundable deposits on tenancies shall be credited to Buyer or delivered to Buyer for deposit in a trust account if required by state or local law. Buyer shall pay any sales or use tax applicable to the transfer of personal property included in the sale.

   **a. Unpaid Utility Charges.** Buyer and Seller ☐ WAIVE ☒ DO NOT WAIVE (do not waive if neither box checked) the right to have the Closing Agent disburse closing funds necessary to satisfy unpaid utility charges affecting the Property pursuant to RCW 60.80. If "do not waive" is checked, then attach CBA Form UA ("Utility Charges" Addendum) to this Agreement.

INITIALS: BUYER _SZ_ DATE 5/11/2015  SELLER _CA_ DATE 5/13/15

BUYER _____ DATE _____  SELLER _____ DATE _____

DocuSign Envelope ID: 07F6979E-06E3-4F7A-81DC-1A94DB279A85

© Commercial Brokers Association
2011
ALL RIGHTS RESERVED 
CBA Form PS_1A
Purchase & Sale Agreement
Rev. 1/2011
Page 5 of 13

## COMMERCIAL & INVESTMENT REAL ESTATE
## PURCHASE & SALE AGREEMENT
## (CONTINUED)

9. **POST-CLOSING ADJUSTMENTS, COLLECTIONS, AND PAYMENTS.** After Closing, Buyer and Seller shall reconcile the actual amount of revenues or liabilities upon receipt or payment thereof to the extent those items were prorated or credited at Closing based upon estimates. Any bills or invoices received by Buyer after Closing which relate to services rendered or goods delivered to the Seller or the Property prior to Closing shall be paid by Seller upon presentation of such bill or invoice. At Buyer's option, Buyer may pay such bill or invoice and be reimbursed the amount paid plus interest at the rate of 12% per annum beginning fifteen (15) days from the date of Buyer's written demand to Seller for reimbursement until such reimbursement is made. Notwithstanding the foregoing, if tenants pay certain expenses based on estimates subject to a post-closing reconciliation to the actual amount of those expenses, then Buyer shall be entitled to any surplus and shall be liable for any credit resulting from the reconciliation. Rents collected from each tenant after Closing shall be applied first to rentals due most recently from such tenant for the period after closing, and the balance shall be applied for the benefit of Seller for delinquent rentals owed for a period prior to closing. The amounts applied for the benefit of Seller shall be turned over by Buyer to Seller promptly after receipt. Seller shall be entitled to pursue any lawful methods of collection of delinquent rents but shall have no right to evict tenants after Closing.

10. **OPERATIONS PRIOR TO CLOSING.** Prior to Closing, Seller shall continue to operate the Property in the ordinary course of its business and maintain the Property in the same or better condition than as existing on the date of Mutual Acceptance but shall not be required to repair material damage from casualty except as otherwise provided in this Agreement. After the Feasibility Period, Seller shall not enter into or modify existing rental agreements or leases (except that Seller may enter into, modify, extend, renew or terminate residential rental agreements or residential leases in the ordinary course of its business), service contracts, or other agreements affecting the Property which have terms extending beyond Closing without first obtaining Buyer's consent, which shall not be unreasonably withheld.

11. **POSSESSION.** Buyer shall be entitled to possession [X] on closing [ ] _____ (on closing, if not completed). Buyer shall accept possession subject to all tenancies disclosed to Buyer during the Feasibility Period.

12. **SELLER'S REPRESENTATIONS.** Except as disclosed to or known by Buyer prior to the satisfaction or waiver of the feasibility contingency stated in Section 5 above, including in the books, records and documents made available to Buyer, or in the title report or any supplemental report or documents referenced therein, Seller represents to Buyer that, to the best of Seller's actual knowledge, each of the following is true as of the date hereof: (a) Seller is authorized to enter into the Agreement, to sell the Property, and to perform its obligations under the Agreement; (b) The books, records, leases, agreements and other items delivered to Buyer pursuant to this Agreement comprise all material documents in Seller's possession or control regarding the operation and condition of the Property; (c) Seller has not received any written notices that the Property or the business conducted thereon violate any applicable laws, regulations, codes and ordinances; (d) Seller has all certificates of occupancy, permits, and other governmental consents necessary to own and operate the Property for its current use; (e) There is no pending or threatened litigation which would adversely affect the Property or Buyer's ownership thereof after Closing; (f) There is no pending or threatened condemnation or similar proceedings affecting the Property, and the Property is not within the boundaries of any planned or authorized local improvement district; (g) Seller has paid (except to the extent prorated at Closing) all local, state and federal taxes (other than real and personal property taxes and assessments described in Section 8 above) attributable to the period prior to closing which, if not paid, could constitute a lien on Property (including any personal property), or for which Buyer may be held liable after Closing; (h) Seller is not aware of any concealed material defects in the Property except as disclosed to Buyer in writing during the Feasibility Period; (i) There are no Hazardous Substances (as defined below) currently located in, on, or under the Property in a manner or quantity that presently violates any Environmental Law (as defined below); there are no underground storage tanks located on the Property; and there is no pending or threatened investigation or

INITIALS: BUYER _SX_ DATE _5/11/2015_ SELLER _CA_ DATE _5/13/15_
BUYER _____ DATE _____ SELLER _____ DATE _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

464 12th Avenue

© Commercial Brokers Association
2011
ALL RIGHTS RESERVED 

CBA Form PS_1A
Purchase & Sale Agreement
Rev. 1/2011
Page 6 of 13

## COMMERCIAL & INVESTMENT REAL ESTATE
## PURCHASE & SALE AGREEMENT
## (CONTINUED)

remedial action by any governmental agency regarding the release of Hazardous Substances or the violation of Environmental Law at the Property. As used herein, the term "Hazardous Substances" shall mean any substance or material now or hereafter defined or regulated as a hazardous substance, hazardous waste, toxic substance, pollutant, or contaminant under any federal, state, or local law, regulation, or ordinance governing any substance that could cause actual or suspected harm to human health or the environment ("Environmental Law"). The term "Hazardous Substances" specifically includes, but is not limited to, petroleum, petroleum by-products, and asbestos.

If prior to Closing Seller or Buyer discovers any information which would cause any of the representations above to be false if the same were deemed made as of the date of such discovery, then the party discovering the same shall promptly notify the other party in writing. If the newly-discovered information will result in costs or liability to Buyer in excess of the lesser of $100,000 or five percent (5%) of the purchase price stated in this Agreement, or will materially adversely affect Buyer's intended use of the Property, then Buyer shall have the right to terminate the Agreement and receive a refund of its earnest money. Buyer shall give notice of termination within five (5) days of discovering or receiving written notice of the new information. Nothing in this paragraph shall prevent Buyer from pursuing its remedies against Seller if Seller had actual knowledge of the newly-discovered information such that a representation provided for above was false.

13. **AS-IS.** Except for those representations and warranties specifically included in this Agreement: (i) Seller makes no representations or warranties regarding the Property; (ii) Seller hereby disclaims, and Buyer hereby waives, any and all representations or warranties of any kind, express or implied, concerning the Property or any portion thereof, as to its condition, value, compliance with laws, status of permits or approvals, existence or absence of hazardous material on site, occupancy rate or any other matter of similar or dissimilar nature relating in any way to the Property, including the warranties of fitness for a particular purpose, tenantability, habitability and use; (iii) Buyer otherwise takes the Property "AS IS;" and (iv) Buyer represents and warrants to Seller that Buyer has sufficient experience and expertise such that it is reasonable for Buyer to rely on its own pre-closing inspections and investigations.

14. **PERSONAL PROPERTY.**
    a. This sale includes all right, title and interest of Seller to the following tangible personal property: ☒ None
    ☐ That portion of the personal property located on and used in connection with the Property, which Seller will itemize in an Exhibit to be attached to this Agreement within ten (10) days of Mutual Acceptance (None, if not completed). The value assigned to the personal property shall be $_____ (if not completed, the County-assessed value if available, and if not available, the fair market value determined by an appraiser selected by the Listing Broker and Selling Broker). Seller warrants title to, but not the condition of, the personal property and shall convey it by bill of sale.
    b. In addition to the leases and Vendor Contracts assumed by Buyer pursuant to Section 5(a) above, this sale includes all right, title and interest of Seller to the following intangible property now or hereafter existing with respect to the Property including without limitation: all rights-of-way, rights of ingress or egress or other interests in, on, or to, any land, highway, street, road, or avenue, open or proposed, in, on, or across, in front of, abutting or adjoining the Property; all rights to utilities serving the Property; all drawings, plans, specifications and other architectural or engineering work product; all governmental permits, certificates, licenses, authorizations and approvals; all rights, claims, causes of action, and warranties under contracts with contractors, engineers, architects, consultants or other parties associated with the Property; all utility, security and other deposits and reserve accounts made as security for the fulfillment of any of Seller's obligations; any name of or telephone numbers for the Property and related trademarks, service marks or trade dress; and guaranties, warranties or other assurances of performance received.

INITIALS: BUYER [DS] SA  DATE 5/11/2015   SELLER CA   DATE 5/13/15
         BUYER _____  DATE _____  SELLER ____ DATE _____

DocuSign Envelope ID: 07F6979E-06E3-4F7A-81DC-1A94DB279A85

© Commercial Brokers Association
2011
ALL RIGHTS RESERVED 

CBA Form PS_1A
Purchase & Sale Agreement
Rev. 1/2011
Page 7 of 13

# COMMERCIAL & INVESTMENT REAL ESTATE
# PURCHASE & SALE AGREEMENT
## (CONTINUED)

**15. CONDEMNATION AND CASUALTY.** Seller bears all risk of loss until Closing, and thereafter Buyer shall bear the risk of loss. Buyer may terminate this Agreement and obtain a refund of the earnest money if improvements on the Property are destroyed or materially damaged by casualty before Closing, or if condemnation proceedings are commenced against all or a portion of the Property before Closing. Damage will be considered material if the cost of repair exceeds the lesser of $100,000 or five percent (5%) of the purchase price stated in this Agreement. Alternatively, Buyer may elect to proceed with closing, in which case, at Closing, Seller shall assign to Buyer all claims and right to proceeds under any property insurance policy and shall credit to Buyer at Closing the amount of any deductible provided for in the policy.

**16. FIRPTA - TAX WITHHOLDING AT CLOSING.** Closing Agent is instructed to prepare a certification (CBA or NWMLS Form 22E, or equivalent) that Seller is not a "foreign person" within the meaning of the Foreign Investment in Real Property Tax Act, and Seller shall sign it on or before Closing. If Seller is a foreign person, and this transaction is not otherwise exempt from FIRPTA, Closing Agent is instructed to withhold and pay the required amount to the Internal Revenue Service.

**17. CONVEYANCE.** Title shall be conveyed by a Statutory Warranty Deed subject only to the Permitted Exceptions. If this Agreement is for conveyance of Seller's vendee's interest in a Real Estate Contract, the Statutory Warranty Deed shall include a contract vendee's assignment sufficient to convey after acquired title. At Closing, Seller and Buyer shall execute and deliver to Closing Agent CBA Form No. PS-AS Assignment and Assumption Agreement transferring all leases and Vendor Contracts assumed by Buyer pursuant to Section 5(a) and all intangible property transferred pursuant to Section 14(b).

**18. NOTICES AND COMPUTATION OF TIME.** Unless otherwise specified, any notice required or permitted in, or related to, this Agreement (including revocations of offers and counteroffers) must be in writing. Notices to Seller must be signed by at least one Buyer and must be delivered to Seller and Listing Broker with a courtesy copy to any other party identified as a recipient of notices in Section 28. A notice to Seller shall be deemed delivered only when received by Seller, Listing Broker, or the licensed office of Listing Broker. Notices to Buyer must be signed by at least one Seller and must be delivered to Buyer, with a copy to Selling Broker and with a courtesy copy to any other party identified as a recipient of notices in Section 28. A notice to Buyer shall be deemed delivered only when received by Buyer, Selling Broker, or the licensed office of Selling Broker. Selling Broker and Listing Broker have no responsibility to advise of receipt of a notice beyond either phoning the represented party or causing a copy of the notice to be delivered to the party's address provided in this Agreement. Buyer and Seller shall keep Selling Broker and Listing Broker advised of their whereabouts in order to receive prompt notification of receipt of a notice. If any party is not represented by a licensee, then notices must be delivered to and shall be effective when received by that party at the address, fax number, or email indicated in Section 28.

Unless otherwise specified in this Agreement, any period of time in this Agreement shall mean Pacific Time and shall begin the day after the event starting the period and shall expire at 5:00 p.m. of the last calendar day of the specified period of time, unless the last day is a Saturday, Sunday or legal holiday as defined in RCW 1.16.050, in which case the specified period of time shall expire on the next day that is not a Saturday, Sunday or legal holiday. Any specified period of five (5) days or less shall not include Saturdays, Sundays or legal holidays. Notwithstanding the foregoing, references to specific dates or times or number of hours shall mean those dates, times or number of hours; provided, however, that if the Closing Date falls on a Saturday, Sunday, or legal holiday as defined in RCW 1.16.050, or a date when the county recording office is closed, then the Closing Date shall be the next regular business day.

INITIALS: BUYER _SK_ DATE 5/11/2015 SELLER _CA_ DATE 5/13/15
BUYER _____ DATE _____ SELLER _____ DATE _____

464 12th Avenue

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

Case 15-13060-TWD    Doc 26-1    Filed 05/29/15    Ent. 05/29/15 11:13:52    Pg. 7 of 20

DocuSign Envelope ID: 07F6979E-06E3-4F7A-81DC-1A94DB279A85

© Commercial Brokers Association
2011
ALL RIGHTS RESERVED 

CBA Form PS_1A
Purchase & Sale Agreement
Rev. 1/2011
Page 8 of 13

## COMMERCIAL & INVESTMENT REAL ESTATE
## PURCHASE & SALE AGREEMENT
## (CONTINUED)

**19. AGENCY DISCLOSURE.** At the signing of this Agreement,
Selling Broker <u>James Tjoa of RE/MAX Metro Realty</u>
Represented <u>Buyer</u>
and the Listing Broker <u>Nicholas Gill & Allan Friedman of Westlake Associates, Inc.</u>
represented <u>Seller</u>

Selling Firm, Selling Firm's Designated Broker, Selling Broker's Branch Manager (if any) and Selling Broker's Managing Broker (if any) represent the same party that Selling Broker represents. Listing Firm, Listing Firm's Designated Broker, Listing Broker's Branch Manager (if any), and Listing Broker's Managing Broker (if any) represent the same party that the Listing Broker represents. If Selling Broker and Listing Broker are different persons affiliated with the same Firm, then both Buyer and Seller confirm their consent to the Brokers' Designated Broker, Branch Manager (if any), and Managing Broker (if any) representing both parties as a dual agent. If Selling Broker and Listing Broker are the same person representing both parties, then both Buyer and Seller confirm their consent to that person and his/her Designated Broker, Branch Manager (if any), and Managing Broker (if any) representing both parties as dual agents. All parties acknowledge receipt of the pamphlet entitled "The Law of Real Estate Agency."

**20. ASSIGNMENT.** Buyer [X] may [ ] may not (may not, if not completed) assign this Agreement, or Buyer's rights hereunder, without Seller's prior written consent, unless provided otherwise herein. If the "may not" option is selected and the words "and/or assigns" or similar words are used to identify the Buyer, then this Agreement may be assigned with notice to Seller but without Seller's consent only to an entity which is controlled by or under common control with the Buyer identified in this Agreement. Any other assignment requires Seller's consent. The party identified as the initial Buyer shall remain responsible for those obligations of Buyer stated in this Agreement notwithstanding any assignment and, if this Agreement provides for Seller to finance a portion of the purchase price, then the party identified as the initial Buyer shall guarantee payment of the Seller financing.

**21. DEFAULT AND ATTORNEY'S FEE.**
(a) **Buyer's default.** In the event Buyer fails, without legal excuse, to complete the purchase of the Property, then *(check one):*

[X] Seller may terminate this Agreement and keep the earnest money as liquidated damages as the sole and exclusive remedy available to Seller for such failure; or

[ ] Seller may, at its option, (a) terminate this Agreement and keep as liquidated damages the earnest money as the sole and exclusive remedy available to Seller for such failure, (b) bring suit against Buyer for Seller's actual damages, (c) bring suit to specifically enforce this Agreement and recover any incidental damages, or (d) pursue any other rights or remedies available at law or equity.

(b) **Seller's default.** In the event Seller fails, without legal excuse, to complete the sale of the Property, then *(check one):*

[X] As Buyer's sole remedy, Buyer may either (a) terminate this Agreement and recover all earnest money or fees paid by Buyer whether or not the same are identified as refundable or applicable to the purchase price; or (b) bring suit to specifically enforce this Agreement and recover incidental damages, provided, however, Buyer must file suit within sixty (60) days from the scheduled date of closing or from the date Seller has informed Buyer in writing that Seller will not proceed with closing, whichever is earlier; or

[ ] Buyer may, at its option, (a) bring suit against Seller for Buyer's actual damages, (b) bring suit to specifically enforce this Agreement and recover any incidental damages, or (c) pursue any other rights or remedies available at law or equity.

INITIALS: BUYER _SL_ [DS] DATE _5/11/2015_  SELLER _DA_ DATE _5/13/15_
BUYER _____ DATE _____  SELLER _____ DATE _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

464 12th Avenue

© Commercial Brokers Association
2011
ALL RIGHTS RESERVED 

CBA Form PS_1A
Purchase & Sale Agreement
Rev. 1/2011
Page 9 of 13

# COMMERCIAL & INVESTMENT REAL ESTATE
# PURCHASE & SALE AGREEMENT
# (CONTINUED)

Neither Buyer nor Seller may recover consequential damages such as lost profits. If Buyer or Seller institutes suit against the other concerning this Agreement, the prevailing party is entitled to reasonable attorneys' fees and expenses. In the event of trial, the amount of the attorney's fee shall be fixed by the court. The venue of any suit shall be the county in which the Property is located, and this Agreement shall be governed by the laws of the state where the Property is located.

22. **MISCELLANEOUS PROVISIONS.**

    a. **Complete Agreement.** This Agreement and any addenda and exhibits thereto state the entire understanding of Buyer and Seller regarding the sale of the Property. There are no verbal or other written agreements which modify or affect the Agreement.

    b. **Counterpart Signatures.** This Agreement may be signed in counterpart, each signed counterpart shall be deemed an original, and all counterparts together shall constitute one and the same agreement.

    c. **Electronic Delivery.** Electronic delivery of documents (e.g., transmission by facsimile or email) including signed offers or counteroffers and notices shall be legally sufficient to bind the party the same as delivery of an original. At the request of either party, or the Closing Agent, the parties will replace electronically delivered offers or counteroffers with original documents.

    d. **Section 1031 Like-Kind Exchange.** If either Buyer or Seller intends for this transaction to be a part of a Section 1031 like-kind exchange, then the other party agrees to cooperate in the completion of the like-kind exchange so long as the cooperating party incurs no additional liability in doing so, and so long as any expenses (including attorneys fees and costs) incurred by the cooperating party that are related only to the exchange are paid or reimbursed to the cooperating party at or prior to Closing. Notwithstanding Section 20 above, any party completing a Section 1031 like-kind exchange may assign this Agreement to its qualified intermediary or any entity set up for the purposes of completing a reverse exchange.

23. **ACCEPTANCE; COUNTEROFFERS.** Seller has until midnight of _____ (if not filled in, the third business day) following the day Buyer delivers the offer to accept this offer, unless sooner withdrawn. If this offer is not timely accepted, it shall lapse and the earnest money shall be refunded to Buyer. If either party makes a future counteroffer, the other party shall have until 5:00p.m. on the _____ business day (if not filled in, the second business day) following receipt to accept the counteroffer, unless sooner withdrawn. If the counteroffer is not timely accepted or countered, this Agreement shall lapse and the earnest money shall be refunded to the Buyer. No acceptance, offer or counteroffer from the Buyer is effective until a signed copy is received by the Seller, the Listing Broker or the licensed office of the Listing Broker. No acceptance, offer or counteroffer from the Seller is effective until a signed copy is received by the Buyer, the Selling Broker or the licensed office of the Selling Broker. "Mutual Acceptance" shall occur when the last counteroffer is signed by the offeree, and the fully-signed counteroffer has been received by the offeror, his or her broker, or the licensed office of the broker. If any party is not represented by a broker, then notices must be delivered to and shall be effective when received by that party.

24. **INFORMATION TRANSFER.** In the event this Agreement is terminated, Buyer agrees to deliver to Seller within ten (10) days of Seller's written request copies of all materials received from Seller and any non-privileged plans, studies, reports, inspections, appraisals, surveys, drawings, permits, applications or other development work product relating to the Property in Buyer's possession or control as of the date this Agreement is terminated.

INITIALS: BUYER SL DATE 5/11/2015 SELLER UA DATE 5/13/15
BUYER _____ DATE _____ SELLER _____ DATE _____

464 12th Avenue
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

DocuSign Envelope ID: 07F6979E-06E3-4F7A-81DC-1A94DB279A85

© Commercial Brokers Association
2011
ALL RIGHTS RESERVED 

CBA Form PS_1A
Purchase & Sale Agreement
Rev. 1/2011
Page 10 of 13

## COMMERCIAL & INVESTMENT REAL ESTATE
## PURCHASE & SALE AGREEMENT
## (CONTINUED)

25. **CONFIDENTIALITY.** Until and unless closing has been consummated, Buyer and Seller shall follow reasonable measures to prevent unnecessary disclosure of information obtained in connection with the negotiation and performance of this Agreement. Neither party shall use or knowingly permit the use of any such information in any manner detrimental to the other party.

26. **SELLER'S ACCEPTANCE AND BROKERAGE AGREEMENT.** Seller agrees to sell the Property on the terms and conditions herein, and further agrees to pay a commission in a total amount computed in accordance with the listing or commission agreement. If there is no written listing or commission agreement, Seller agrees to pay a commission of _____ % of the sales price or $_____. The commission shall be apportioned between Listing Firm and Selling Firm as specified in the listing or any co-brokerage agreement. If there is no listing or written co-brokerage agreement, then Listing Firm shall pay to Selling Firm a commission of __2.0__ % of the sales price or $_____. Seller assigns to Listing Firm and Selling Firm a portion of the sales proceeds equal to the commission. If the earnest money is retained as liquidated damages, any costs advanced or committed by Listing Firm or Selling Firm for Buyer or Seller shall be reimbursed or paid therefrom, and the balance shall be paid one-half to Seller and one-half to Listing Firm and Selling Firm according to the listing agreement and any co-brokerage agreement. In any action by Listing Firm or Selling Firm to enforce this Section, the prevailing party is entitled to reasonable attorneys' fees and expenses. Neither Listing Firm nor Selling Firm are receiving compensation from more than one party to this transaction unless disclosed on an attached addendum, in which case Buyer and Seller consent to such compensation. The Property described in attached Exhibit A is commercial real estate. Notwithstanding Section 25 above, the pages containing this Section, the parties' signatures and an attachment describing the Property may be recorded.

27. **LISTING BROKER AND SELLING BROKER DISCLOSURE.** EXCEPT AS OTHERWISE DISCLOSED IN WRITING TO BUYER OR SELLER, THE SELLING BROKER, LISTING BROKER, AND FIRMS HAVE NOT MADE ANY REPRESENTATIONS OR WARRANTIES OR CONDUCTED ANY INDEPENDENT INVESTIGATION CONCERNING THE LEGAL EFFECT OF THIS AGREEMENT, BUYER'S OR SELLER'S FINANCIAL STRENGTH, BOOKS, RECORDS, REPORTS, STUDIES, OR OPERATING STATEMENTS; THE CONDITION OF THE PROPERTY OR ITS IMPROVEMENTS; THE FITNESS OF THE PROPERTY FOR BUYER'S INTENDED USE; OR OTHER MATTERS RELATING TO THE PROPERTY, INCLUDING WITHOUT LIMITATION, THE PROPERTY'S ZONING, BOUNDARIES, AREA, COMPLIANCE WITH APPLICABLE LAWS (INCLUDING LAWS REGARDING ACCESSIBILITY FOR DISABLED PERSONS), OR HAZARDOUS OR TOXIC MATERIALS INCLUDING MOLD OR OTHER ALLERGENS. SELLER AND BUYER ARE EACH ADVISED TO ENGAGE QUALIFIED EXPERTS TO ASSIST WITH THESE DUE DILIGENCE AND FEASIBILITY MATTERS, AND ARE FURTHER ADVISED TO SEEK INDEPENDENT LEGAL AND TAX ADVICE RELATED TO THIS AGREEMENT.

INITIALS: BUYER _SL_ (DS) DATE _5/11/2015_ SELLER _CA_ DATE _5/13/15_
BUYER _____ DATE _____ SELLER _____ DATE _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

464 12th Avenue

Case 15-13060-TWD    Doc 26-1    Filed 05/29/15    Ent. 05/29/15 11:13:52    Pg. 10 of 20

© Commercial Brokers Association
2011
ALL RIGHTS RESERVED 

CBA Form PS_1A
Purchase & Sale Agreement
Rev. 1/2011
Page 11 of 13

# COMMERCIAL & INVESTMENT REAL ESTATE
# PURCHASE & SALE AGREEMENT
# (CONTINUED)

**28. IDENTIFICATION OF THE PARTIES.** The following is the contact information for the parties involved in this Agreement:

### Buyer
Contact: Sharon Lee / LIHI
Address: 2407 First Avenue, Suite 200
Seattle, WA 98121
Business Phone: (206)433-9935
Mobile Phone:
Fax:
Email: sharon@lihi.org

### Seller
Contact: Recovery Center of King County
Address: 464 12th Ave
Seattle WA 98122
Business Phone: 206 568 8227
Mobile Phone:
Fax:
Email: Chayes@rckc.org

### Selling Licensee
Name: James Tjoa of RE/MAX Metro Realty
Address: 2312 Eastlake Avenue E
Seattle, WA 98102
Business Phone: (206)322-5700
Mobile Phone: (206)226-2800
Fax: (206)322-7576
Email: james@jamestjoa.com

### Listing Agent
Name: Low Income Housing Institute (LIHI), a Washington non-profit
Address: 1200 Westlake Avenue North, Suite 310
Seattle, WA 98109-3528
Business Phone: (206)505-9410
Mobile Phone: (206)612-6504
Fax: (206)505-9439
Email: gill@westlakeassociates.com

### Licensed Office of Selling Licensee
Address: 2312 Eastlake Avenue E
Seattle, WA 98102
Business Phone:
Mobile Phone:
Fax:
CBA Office No.:

### Licensed Office of Listing Agent
Address: 1200 Westlake Avenue North, Suite 310
Seattle, WA 98109-3528
Business Phone:
Mobile Phone:
Fax:
CBA Office No.: 9262

### Courtesy Copy of Notices to Buyer to:
Name:
Address:

Business Phone:
Mobile Phone:
Fax:
Email:

### Courtesy Copy of Notices to Seller to:
Name: Allan Friedman
Address:

Business Phone: (206)505-9406
Mobile Phone: (206)850-6659
Fax: (206)505-9439
Email: allanf@westlakeassociates.com

INITIALS: BUYER SL [DS] DATE 5/11/2015   SELLER CH DATE 5/13/15
BUYER _____ DATE _____   SELLER _____ DATE _____

DocuSign Envelope ID: 07F6979E-06E3-4F7A-81DC-1A94DB279A85

© Commercial Brokers Association
2011
ALL RIGHTS RESERVED 

CBA Form PS_1A
Purchase & Sale Agreement
Rev. 1/2011
Page 12 of 13

# COMMERCIAL & INVESTMENT REAL ESTATE
# PURCHASE & SALE AGREEMENT
# (CONTINUED)

IN WITNESS WHEREOF, the parties have signed this Agreement intending to be bound.

Buyer Low Income Housing Institute (LIHI), a Washington non-profit
Printed name and type of entity

Buyer *Sharon Lee*
Signature and title
Sharon Lee, Executive Director

Date signed 5/11/2015

Buyer _____
Printed name and type of entity

Buyer _____
Signature and title

Date signed _____

Seller Recovery Center of King County, WA non-profit
Printed name and type of entity

Seller [signature] Hayes, Director
Signature and title

Date signed 5-13-15

Seller _____
Printed name and type of entity

Seller _____
Signature and title

Date signed _____

INITIALS: BUYER SL  DATE 5/11/2015  SELLER _____  DATE _____
BUYER _____  DATE _____  SELLER _____  DATE _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com    464 12th Avenue

© Commercial Brokers Association
2011
ALL RIGHTS RESERVED 

CBA Form PS_1A
Purchase & Sale Agreement
Rev. 1/2011
Page 13 of 13

# COMMERCIAL & INVESTMENT REAL ESTATE
# PURCHASE & SALE AGREEMENT
# (CONTINUED)

### EXHIBIT A*
[Legal Description]

PROPERTY: 464 - 12th Avenue, Seattle, WA

TAX ACCOUNT NUMBER: 794930-0005

LEGAL DESCRIPTION: Buyer and Seller authorize Closing Agent to insert, over their signatures, the correct legal description of the Property.

Lots 1, 2, 3 and 4, Block A, W.C. Squire's Replat of Block Nine of Squire Park Addition to the City of Seattle, according to the plat thereof recorded in Volume 9 of Plats, page 84, in King County, Washington;

EXCEPT that portion of Lot 1 heretofore condemned in King County Superior Court Cause No. 61476 for 12th Avenue, as provided under Ordinance No. 17972 of the City of Seattle.

SUBJECT TO easements, restrictions, reservations, covenants and conditions of record, if any.

* To ensure accuracy in the legal description, consider substituting the legal description contained in the preliminary commitment for title insurance or a copy of the Property's last vesting deed for this page. Do not neglect to label the substitution "Exhibit A." You should avoid transcribing the legal description because any error in transcription may render the legal description inaccurate and this Agreement void and unenforceable.

INITIALS: BUYER SK   DATE 5/11/2015   SELLER DA   DATE 5-13-15
BUYER ___   DATE ___   SELLER ___   DATE ___

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

464 12th Avenue

© Commercial Brokers Association
2011
ALL RIGHTS RESERVED 

CBA Form UA
Utility Addendum
Rev. 1/2011
Page 1 of 2

# UTILITY CHARGES ADDENDUM

The following is part of the Purchase and Sale Agreement dated __May 11, 2015__ between __Low Income Housing Institute (LIHI), a Washington non-profit corporation__ ("Buyer") and __Recovery Center of King County__ ("Seller") concerning __464 12th Avenue, Seattle, WA 98122, Seattle,__ (the "Property").

Pursuant to RCW 60.80, Buyer and Seller request the Closing Agent to administer the disbursement of closing funds necessary to satisfy unpaid utility charges affecting the Property. The names and addresses of all utilities providing service to the Property and having lien rights are as follows:

**Water District:**
Name: Seattle City Light
Address: PO Box 34016
City, State, Zip: Seattle, WA 98124

**Sewer District:**
Name: Seattle City Light
Address: PO Box 34016
City, State, Zip: Seattle, WA 98124

**Irrigation District:**
Name: n/a
Address:
City, State, Zip:

**Garbage:**
Name: Recology
Address: PO Box 34260
City, State, Zip: Seattle, WA 98124

**Electricity:**
Name: Seattle City Light
Address: PO Box 34016
City, State, Zip: Seattle, WA 98124

INITIALS: BUYER SL  DATE 5/11/2015   SELLER CM  DATE 5/13/15
BUYER ___  DATE ___   SELLER ___  DATE ___

James Tjon & Associates, 2312 Eastlake Ave E Seattle, WA 98102    Phone: (206)726-6229    Fax: (206)322-7576    464 12th Avenue PSA -
Megan Collier                Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

DocuSign Envelope ID: 07F6979E-06E3-4F7A-81DC-1A94DB279A85

© Commercial Brokers Association
2011
ALL RIGHTS RESERVED  CBA

CBA Form UA
Utility Addendum
Rev. 1/2011
Page 2 of 2

# UTILITY CHARGES ADDENDUM
## (CONTINUED)

Gas:

n/A
Name

_____
Address

_____
City, State, Zip

Special District(s):
(local improvement districts
or utility local improvement)

_____
Name

_____
Address

_____
City, State, Zip

IF THE ABOVE INFORMATION HAS NOT BEEN FILLED IN AT THE TIME OF MUTUAL ACCEPTANCE OF THIS AGREEMENT, THEN (1) WITHIN _____ DAYS (5 DAYS IF NOT FILLED IN) OF MUTUAL ACCEPTANCE OF THIS AGREEMENT, SELLER SHALL PROVIDE THE LISTING BROKER, SELLING BROKER, OR CLOSING AGENT WITH THE NAMES AND ADDRESSES OF ALL UTILITY PROVIDERS HAVING LIEN RIGHTS AFFECTING THE PROPERTY AND (2) BUYER AND SELLER AUTHORIZE LISTING BROKER, SELLING BROKER OR CLOSING AGENT TO INSERT INTO THIS ADDENDUM THE NAMES AND ADDRESSES OF THE UTILITY PROVIDERS IDENTIFIED BY SELLER. SELLER ACKNOWLEDGES THAT THIS ADDENDUM DOES NOT RELIEVE SELLER OF ITS OBLIGATION TO PAY UTILITY CHARGES, BILLED OR UNBILLED OR EVIDENCED BY A RECORDED LIEN OR NOT. THE PARTIES UNDERSTAND THAT NEITHER LISTING BROKER NOR SELLING BROKER IS RESPONSIBLE FOR PAYING UTILITY CHARGES OR FOR INSURING THAT THEY ARE PAID BY ANY OTHER PERSON.

INITIALS: BUYER SL  DATE 5/11/2015  SELLER DA  DATE 5-13-15
BUYER _____ DATE _____  SELLER _____ DATE _____

464 12th Avenue

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Case 15-13060-TWD    Doc 26-1    Filed 05/29/15    Ent. 05/29/15 11:13:52    Pg. 15 of 20

© Commercial Brokers Association
2011
ALL RIGHTS RESERVED

CBA Form PSA
Addendum/Amendment to PSA
Rev. 1/2011
Page 1 of 1

## First ADDENDUM/AMENDMENT TO PURCHASE AND SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated May 11, 2015, (the "Agreement"), between Low Income Housing Institute (LIHI), a Washington non-profit corporation ("Buyer"), and Recovery Center of King County ("Seller"), regarding the sale of the Property known as: 464 12th Avenue, Seattle, WA 98122, Seattle, (the "Property").

IT IS AGREED BETWEEN THE SELLER AND BUYER AS FOLLOWS:

1. EARNEST MONEY: The Earnest Money Promissory Note in the amount of $100,000.00 is to be converted to cash two (2) days from the date of Buyer's receipt of bankruptcy court approval, to be held by Closing Agent. Within two (2) days from the date of Buyer's waiver or satisfaction of the Financing Contingency, said Earnest Monies shall be transferred to Seller and the funds shall be non-refundable to the Buyer (except in the event of Seller's default) and shall be applicable to the total Purchase Price at closing.

2. BANKRUPTCY COURT CONTINGENCY: This Purchase and Sale Agreement is conditioned upon review and approval by a bankruptcy court. The Seller must provide written notice to Buyer of the court's decision within thirty (30) days of mutual acceptance. If the bankruptcy court does not approve of this Agreement, Buyer may terminate this agreement. If the bankruptcy court provides approval of this Agreement, this condition shall be deemed satisfied.

3. ELECTRONIC SIGNATURES: Buyer and Seller agree that electronic signatures may be used in this transaction and shall have the same legal effect as written signatures.

4. UNIFORM RELOCATION ACT AND REAL PROPERTY ACQUISITION ACT: Buyer hereby informs Seller that Buyer may utilize federal funds with respect to the acquisition, rehabilitation, and/or development of the Property. Because federal funds may be so used, Buyer discloses to Seller as follows: a) the sale is voluntary. If Seller does not wish to sell, Buyer does not have the power to acquire the Property by condemnation or eminent domain and therefore will not acquire the Property if negotiations fail to result in amicable agreement; b) the use of such funds could result in the application of the Uniform Relocation Act and Real Property Acquisition Act to the acquisition of the Property; and c) Buyer estimates that fair market value of the Property to be the Purchase Price of $4,100,000.00

5. CONFLICT OF TERMS: In the event any of the terms and/or conditions of this Addendum/Amendment Agreement conflict with the Purchase and Sale Agreement, the terms of this Addendum/Amendment Agreement shall prevail.

6. CLOSING: Closing shall occur ten (10) days after Buyer's satisfaction or waiver of Financing Contingency, but no later than August 3, 2015.

ALL OTHER TERMS AND CONDITIONS of the Agreement remain unchanged.

INITIALS: BUYER SL DATE 5/11/2015 SELLER UA DATE 5-13-15
BUYER _____ DATE _____ SELLER _____ DATE _____

James Tjon & Associates, 2312 Eastlake Ave E Seattle, WA 98102    Phone: (206)726-6329   Fax: (206)322-7576   464 12th Avenue PSA -
Megan Collier                Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

DocuSign Envelope ID: 07F6979E-06E3-4F7A-81DC-1A94DB279A85
© Commercial Brokers Association
2011
ALL RIGHTS RESERVED

CBA Form EMN
E/M Promissory Note
Rev. 1/2011
Page 1 of 1

# EARNEST MONEY PROMISSORY NOTE

$100,000.00

Place: Seattle, WA

Date: May 11, 2015

FOR VALUE RECEIVED, Low Income Housing Institute (LIHI), a Washington non-profit corporation ("Buyer") agrees to pay to the order of Chicago Title of Washington ("Holder") the sum of One Hundred Thousand Dollars ($100,000.00) as follows:

☐ _____ days (3 days if not filled in) following mutual acceptance of the Purchase and Sale Agreement.

☐ Upon satisfaction or waiver of the feasibility contingency stated in the Purchase and Sale Agreement.

☒ Other Within two (2) days of Buyer's satisfaction of waiver of Feasibility Contingency *

This Note is evidence of the obligation to pay earnest money under the purchase and sale agreement (the "Agreement") between the Buyer and Recovery Center of King County ("Seller") dated May 11, 2015 for the property located at: 464 12th Avenue, Seattle, WA 98122, Seattle. Buyer's failure to pay the earnest money strictly as above shall constitute default on the Agreement as well as on this Note.

If Holder retains an attorney for collection of amounts due pursuant to this Note, or if Holder brings suit to collect any amounts due on this Note, Buyer promises to pay a reasonable attorney's fee and costs. This Note shall bear interest at the rate of twelve percent (12%) per annum after default.

BUYER

By: *Sharon Lee*
    57A6C594E1D3401
    DocuSigned By: Sharon Lee
Low Income Housing Insitiute (LIHI), a Washington non-profit corporation
Printed Name and Title: Sharon Lee, Executive Director

\* Do not enter "on closing" as the date this Note becomes due and payable because closing under the Purchase Agreement is not certain to occur. Instead, insert a specific date or an event that is certain to occur.

James Tjoa & Associates, 2312 Eastlake Ave E Seattle, WA 98102      Phone: (206)726-6229      Fax: (206)322-7576      464 12th Avenue
Megan Collier          Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

DocuSign Envelope ID: 07F6979E-06E3-4F7A-81DC-1A94DB279A85

© Commercial Brokers Association
2011
ALL RIGHTS RESERVED

CBA Form PS_FIN
Financing Addendum
Rev. 1/2011
Page 1 of 3

## FINANCING ADDENDUM

The following is part of the Purchase and Sale Agreement dated _____**May 11, 2015**_____ (the "Agreement"), between _____**Low Income Housing Institute (LIHI), a Washington non-profit corporation**_____ ("Buyer"), and _____**Recovery Center of King County**_____ ("Seller"), regarding the sale of the Property known as: **464 12th Avenue, Seattle, WA 98122, Seattle,** _____ (the "Property").

IT IS AGREED BETWEEN THE BUYER AND SELLER AS FOLLOWS

[X] **1. NEW FINANCING.** Buyer's obligations under the Agreement are contingent on Buyer obtaining new financing. Buyer shall submit a complete written application for financing for the Property within five (5) business days after waiver or satisfaction of the Feasibility Period in Section 5 of the Agreement, pay required costs and make a good faith effort to procure such financing. Buyer shall not reject those terms of a commitment which provide for a loan amount of at least $_____ or _____% of the purchase price, interest not to exceed _____% per annum, a payment schedule calling for monthly payments amortized over not less than _____ years, and total placement fees and points of not more than _____% of the loan amount. The Agreement shall terminate and Buyer shall receive a refund of the earnest money unless Buyer gives notice that this condition is satisfied or waived on or before __**45**__ days (60 days, if not completed) following mutual acceptance of the Agreement.

[ ] **2. Assumption of Existing Financing.**

    a. **Approval of Documents.** Buyer's obligations under the Agreement are contingent on Buyer's assumption of a note and mortgage or deed of trust, or a real estate contract. Seller shall deliver to Buyer within five (5) days after mutual acceptance of the Agreement a copy of all documents relating to the obligations that Buyer will assume, including the note, deed of trust, mortgage or real estate contract (or any other underlying debt instruments); any guaranties, non-recourse carve-outs, or indemnity agreements; and any fixture filings or financing statements (the "Underlying Loan Documents"). Buyer shall be deemed to have approved the Underlying Loan Documents unless Buyer gives notice of disapproval during the Feasibility Period.

    b. **Consent to Assumption.** Buyer shall submit a complete application for assumption of the Underlying Loan Documents together with any required application fee no later than five (5) days after the end of the Feasibility Period. Upon Buyer's request, Seller shall assist Buyer by requesting the lender's consent to the assumption on Buyer's behalf. Buyer's principals shall be required to execute any reasonable guaranties and indemnities required by the lender. Unless Buyer has obtained consent or waived this condition within _____ days (30 days, if not completed) after the end of the Feasibility Period and provided Buyer has timely complied with its obligations under this Addendum, this Agreement shall terminate and, Buyer shall receive a refund of the earnest money.

    c. **Assumption Fees and Expenses.** Buyer shall pay all costs and expenses attributable to the assumption of the underlying indebtedness including all application fees, processing charges, and assumption fees.

    d. **Release of Seller and Principals.** Seller's obligations under the Agreement [ ] shall be [ ] shall not be (shall not be, if not completed) conditioned upon Seller and all guarantors or indemnitors being released from their obligations arising under the Underlying Loan Documents for the period on and after Closing.

INITIALS: BUYER _SK_ DATE _5/11/2015_ SELLER _DM_ DATE _5-13-15_
BUYER _____ DATE _____ SELLER _____ DATE _____

James Tjoa & Associates, 2312 Eastlake Ave E Seattle, WA 98102     Phone: (206)726-6229    Fax: (206)322-7576    464 12th Avenue PSA
Megan Collier     Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

© Commercial Brokers Association
2011
ALL RIGHTS RESERVED

CBA Form PS_FIN
Financing Addendum
Rev. 1/2011
Page 2 of 3

# FINANCING ADDENDUM
(CONTINUED)

☐ **3. Seller Financing.**

    a. **Debt Instruments.** If Seller is financing a portion of the purchase price, unless different forms are attached to this Agreement, Buyer shall execute and submit to the Closing Agent: (i) LPB Form No. 28A-05 Promissory Note and the DUE ON SALE and COMMERCIAL PROPERTY optional clauses in that form shall apply; (ii) LPB Form No. 20-05 Short Form Deed of Trust; and (iii) CBA Form DTR Deed of Trust Rider. In addition, Buyer authorizes Seller and Closing Agent to file a financing statement to perfect Seller's security interest in the personal property described in the Deed of Trust Rider.

    b. **Payment Terms.** The promissory note shall bear interest at the rate of _____% per annum, and shall be payable as follows **(choose one):**

        ☐ monthly installments of interest only;

        ☐ monthly installments of $_____;

        ☐ equal monthly installments of principal and interest in an amount sufficient to fully amortize the outstanding principal balance at the stated interest rate over _____ years;

        ☐ other _____.

    Payments shall commence on the first day of the first month after closing and shall continue on the same day of each succeeding month until **(choose one):**

    ☐ _____ months from the date of closing;
    ☐ other _____ on which date all outstanding principal and interest shall be due.

    Buyer ☐ may ☐ may not (may, if not completed) prepay the outstanding principal balance without premium or penalty. If Seller receives any monthly payment more than _____ days (15 days if not filled in) after its due date, then Buyer shall be in default and a late payment charge of $_____ or _____% of the delinquent amount (5% of the delinquent amount if not filled in) shall be added to the scheduled payment. The principal shall, at Seller's option, bear interest at the rate of _____% per annum (18% or the maximum rate allowed by law, whichever is less, if not filled in) during any period of Buyer's default. Buyer shall have _____ days (5 days if not filled in) after written notice from Seller to cure a default before Seller may declare all outstanding sums to be immediately due and payable.

    (**Note to Buyer and Seller:** If the Property is currently used primarily for agricultural purposes, then a non-judicial foreclosure/forfeiture remedy is available to Seller only by using a real estate contract and is not available with a deed of trust.)

4. **Estoppels/SNDAs.** If Buyer or its lender require estoppel certificates or subordination, nondisturbance and attornment agreements ("Estoppel/SNDAs") from some or all of the non-residential tenants at the Property, then Seller shall cooperate with Buyer to obtain them. The form of the Estoppels/SNDAs shall be CBA Form PS_TEC, or any different form required by Buyer's lender which Buyer has delivered to Seller during the Feasibility Period. Promptly after the Feasibility Period, Seller shall use commercially reasonable efforts and diligence to obtain the Estoppel/SNDAs from affected tenants; provided, however, Seller shall not be required to incur any liability or out-of-pocket expenses which are not reimbursed by Buyer. Buyer shall have no separate contingency for receipt of the Estoppels/SNDAs other than as otherwise agreed by Seller in writing.

INITIALS: BUYER _SA_ DATE 5/11/2015    SELLER _DA_ DATE 5/13/15
        BUYER _____ DATE _____    SELLER _____ DATE _____

DocuSign Envelope ID: 07F6979E-06E3-4F7A-81DC-1A94DB279A85

© Commercial Brokers Association
2011
ALL RIGHTS RESERVED

CBA Form PS_FIN
Financing Addendum
Rev. 1/2011
Page 3 of 3

# FINANCING ADDENDUM
(CONTINUED)

5. **ADDITIONAL PROVISIONS.** The terms of the Agreement remain unchanged except as supplemented in this Addendum or provided below:

   <u>This Agreement shall terminate and Buyer shall receive a refund of the Earnest Money unless Buyer gives notice that this condition has been satisfied or waived within forty-five (45) days of mutual acceptance. Buyer's obligations hereunder are subject to Buyer securing, on such terms as satisfactory to Buyer and its lender in their sole discretion.</u>

INITIALS: BUYER SX DATE 5/11/2015     SELLER [signature] DATE 5-13-15
BUYER _____ DATE _____     SELLER _____ DATE _____