© Commercial Brokers Association
2011
ALL RIGHTS RESERVED



CBA Form PS_1A
Purchase & Sale Agreement
Rev. 1/2011
Page 1 of 13

## COMMERCIAL & INVESTMENT REAL ESTATE
## PURCHASE & SALE AGREEMENT
*This has been prepared for submission to your attorney for review and approval prior to signing. No representation is made by licensee as to its sufficiency or tax consequences*

Reference Date: <u>July 7, 2015</u>

<u>METER LLC, a Washington limited liability company, and/or Assigns</u>
("Buyer") agrees to buy and
<u>RECOVERY CENTERS OF KING COUNTY, a non-profit organization</u>
("Seller") agrees to sell, on the following terms, the commercial real estate and all improvements thereon (collectively, the "Property") commonly known as <u>the Wright Building, 464 - 12th Avenue</u>
in the City of <u>Seattle</u> , <u>King</u> County, Washington, <u>98122</u>
legally described on attached Exhibit A. The Reference Date above is intended to be used to reference this Agreement, and is not the date of "Mutual Acceptance." Mutual Acceptance is defined in Section 23 below.

1. **PURCHASE PRICE.** The total purchase price is <u>Three Million, Eight Hundred Thousand</u>
Dollars ($<u>3,800,000.00</u> ) payable as follows (check only one):

   [X] All cash at closing with no financing contingency.

   [ ] All cash at closing contingent on new financing in accordance with the Financing Addendum (attach CBA Form PS_FIN).

   [ ] $_____ OR _____% of the purchase price in cash at closing with the balance of the purchase price paid as follows (check one or both, as applicable): [ ] Buyer's assumption of the outstanding principal balance as of the Closing Date of a first lien note and deed of trust (or mortgage), or real estate contract, in accordance with the Financing Addendum (attach CBA Form PS_FIN); [ ] Buyer's delivery at closing of a promissory note for the balance of the purchase price, secured by a deed of trust encumbering the Property, in accordance with the Financing Addendum (attach CBA Form PS_FIN).

   [ ] Other: _____.

2. **EARNEST MONEY.** The earnest money in the amount of $<u>114,000.00</u> shall be in the form of [ ] Cash [X] Personal check [ ] Promissory note (attached CBA Form EMN) [ ] Other: _____

   The earnest money shall be held by [ ] Selling Firm [X] Closing Agent. Selling Broker may, however, transfer the earnest money to Closing Agent.

   Buyer shall deliver the earnest money no later than:
   [ ] _____ days after Mutual Acceptance,
   [X] On the last day of the Feasibility Period defined in Section 5 below.
   [ ] Other: _____.

   If the earnest money is to be held by Selling Firm and is over $10,000, it shall be deposited to: [ ] Selling Firm's pooled trust account (with interest paid to the State Treasurer) [ ] A separate interest bearing trust account in Selling Firm's name. The interest, if any, shall be credited at closing to Buyer. If this sale fails to close, whoever is entitled to the earnest money is entitled to interest.

   Selling Firm shall deposit any check to be held by Selling Firm within 3 days after receipt or Mutual Acceptance, whichever occurs later. Buyer agrees to pay financing and purchase costs incurred by Buyer. Unless otherwise provided in this Agreement, the earnest money shall be applicable to the purchase price.

3. **EXHIBITS AND ADDENDA.** The following Exhibits and Addenda are made a part of this Agreement:
   [X] Exhibit A - Legal Description
   [ ] Earnest Money Promissory Note, CBA Form EMN

INITIALS: BUYER _____ DATE 7/7/2015 SELLER __CML__ DATE 7-13-15
         BUYER _____ DATE _____ SELLER _____ DATE _____

Westlake Associates, Inc.- Corporate, 1200 Westlake Avenue N, Ste 310 Seattle, WA 98109          Phone: 206-505-9438          Fax: 206-505-9439          PSA - Meter LLC-
Travis Kessler                         Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

DocuSign Envelope ID: 0F441FC9-20A4-4D76-8B32-8D0C4F9AD01C

© Commercial Brokers Association
2011
ALL RIGHTS RESERVED

CBA

CBA Form PS_1A
Purchase & Sale Agreement
Rev. 1/2011
Page 2 of 13

## COMMERCIAL & INVESTMENT REAL ESTATE
## PURCHASE & SALE AGREEMENT
### (CONTINUED)

- [ ] Promissory Note, LPB Form No. 28A
- [ ] Short Form Deed of Trust, LPB Form No. 20
- [ ] Deed of Trust Rider, CBA Form DTR
- [X] Utility Charges Addendum, CBA Form UA
- [ ] FIRPTA Certification, CBA Form 22E
- [ ] Assignment and Assumption, CBA Form PS-AS
- [X] Addendum/Amendment, CBA Form PSA
- [ ] Back-Up Addendum, CBA Form BUA
- [ ] Vacant Land Addendum, CBA Form VLA
- [ ] Financing Addendum, CBA Form PS_FIN
- [ ] Tenant Estoppel Certificate, CBA Form PS_TEC
- [ ] Defeasance Addendum, CBA Form PS_D
- [ ] Other _____

4. **SELLER'S UNDERLYING FINANCING.** Unless Buyer is assuming Seller's underlying financing, Seller shall be responsible for confirming the existing underlying financing is not subject to any "lock out" or similar covenant which would prevent the lender's lien from being released at closing. In addition, Seller shall provide Buyer notice prior to the end of the Feasibility Period if Seller is required to substitute securities for the Property as collateral for the underlying financing (known as "defeasance"). If Seller provides this notice of defeasance to Buyer, then the parties shall close the transaction in accordance with the process described in CBA Form PS_D or any different process identified in Seller's defeasance notice to Buyer.

5. **FEASIBILITY CONTINGENCY.** Buyer's obligations under this Agreement are conditioned upon Buyer's satisfaction in Buyer's sole discretion, concerning all aspects of the Property, including its physical condition; the presence of or absence of any hazardous substances; the contracts and leases affecting the property; the potential financial performance of the Property; the availability of government permits and approvals; and the feasibility of the Property for Buyer's intended purpose. This Agreement shall terminate and Buyer shall receive a refund of the earnest money unless Buyer gives written notice to Seller within __10__ days (30 days if not filled in) (the "Feasibility Period") of Mutual Acceptance stating that this condition is satisfied. If such notice is timely given, the feasibility contingency stated in this Section 5 shall be deemed to be satisfied.

   a. Books, Records, Leases, Agreements. Seller shall make available for inspection by Buyer and its agents within __2__ days (2 days if not filled in) after Mutual Acceptance all documents in Seller's possession or control relating to the ownership, operation, renovation or development of the Property, excluding appraisals or other statements of value, and including: statements for real estate taxes, assessments, and utilities for the last three years and year to date; property management agreements and any other agreements with professionals or consultants; leases or other agreements relating to occupancy of all or a portion of the Property and a suite-by-suite schedule of tenants, rents, prepaid rents, deposits and fees; plans, specifications, permits, applications, drawings, surveys, and studies; maintenance records, accounting records and audit reports for the last three years and year to date; and "Vendor Contracts" which shall include maintenance or service contracts, and installments purchase contracts or leases of personal property or fixtures used in connection with the Property. Buyer shall determine within the Feasibility Period; (i) whether Seller will agree to terminate any objectionable Vendor Contracts; and (ii) whether Seller will agree to pay any damages or penalties resulting from the termination of objectionable Vendor Contracts. Buyer's waiver of the Feasibility Contingency shall be deemed Buyer's acceptance of all Vendor Contracts which Seller has not agreed in writing to terminate. Buyer shall be solely responsible for obtaining any required consents to such assumption

INITIALS: BUYER __CG__ DATE __7/7/2015__ SELLER __CA__ DATE __7-13-15__

BUYER _____ DATE _____ SELLER _____ DATE _____

PSA - Maier LLC

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

DocuSign Envelope ID: 0F441FC9-20A4-4D78-8B32-6D0C4F9AD01C

© Commercial Brokers Association
2011
ALL RIGHTS RESERVED

CBA Form PS_1A
Purchase & Sale Agreement
Rev. 1/2011
Page 3 of 13

## COMMERCIAL & INVESTMENT REAL ESTATE
## PURCHASE & SALE AGREEMENT
## (CONTINUED)

and the payment of any assumption fees. Seller shall cooperate with Buyer's efforts to receive any such consents but shall not be required to incur any out-of-pocket expenses or liability in doing so. Seller shall transfer the Vendor Contracts as provided in Section 17.

b. Access. Seller shall permit Buyer and its agents, at Buyer's sole expense and risk to enter the Property at reasonable times subject to the rights of and after legal notice to tenants, to conduct inspections concerning the Property and improvements, including without limitation, the structural condition of improvements, hazardous materials, pest infestation, soils conditions, sensitive areas, wetlands, or other matters affecting the feasibility of the Property for Buyer's intended use. Buyer shall schedule any entry onto the Property with Seller in advance and shall comply with Seller's reasonable requirements including those relating to security, confidentiality, and disruption of Seller's tenants. Buyer shall not perform any invasive testing including environmental inspections beyond a phase I assessment or contact the tenants or property management personnel without obtaining the Seller's prior written consent, which shall not be unreasonably withheld. Buyer shall restore the Property and improvements to the same condition they were in prior to inspection. Buyer shall be solely responsible for all costs of its inspections and feasibility analysis and has no authority to bind the Property for purposes of statutory liens. Buyer agrees to indemnify and defend Seller from all liens, costs, claims, and expenses, including attorneys' and experts' fees, arising from or relating to entry onto or inspection of the Property by Buyer and its agents. This agreement to indemnify and defend Seller shall survive closing. Buyer may continue to enter the Property in accordance with the foregoing terms and conditions after removal or satisfaction of the feasibility contingency for the purpose of leasing or to satisfy conditions of financing.

c. Buyer waives the right to receive a seller disclosure statement ("Form 17-Commercial") if required by RCW 64.06. However, if Seller would otherwise be required to provide Buyer with a Form 17-Commercial, and if the answer to any of the questions in the section of the Form 17-Commercial entitled "Environmental" would be "yes," then Buyer does not waive the receipt of the "Environmental" section of the Form 17-Commercial which shall be provided by Seller.

6. **TITLE INSURANCE.**

a. Title Report. Seller authorizes Buyer, its Lender, Listing Broker, Selling Broker or Closing Agent, at Seller's expense, to apply for and deliver to Buyer a [X] standard [ ] extended (standard, if not completed) coverage owner's policy of title insurance. If an extended coverage owner's policy is specified, Buyer shall pay the increased costs associated with that policy including the excess premium over that charged for a standard coverage policy, and the cost of any survey required by the title insurer. The title report shall be issued by _____First American Title Insurance Co._____ (a title company of Seller's choice, if not completed). If Seller previously received a preliminary commitment from a title insurer that Buyer declines to use, Buyer shall pay any cancellation fee owing to the original title insurer. Otherwise, the party applying for title insurance shall pay any title cancellation fee, in the event such a fee is assessed.

b. Permitted Exceptions. Buyer shall notify Seller of any objectionable matters in the title report or any supplemental report within the earlier of: (1) twenty (20) days after Mutual Acceptance of this Agreement; or (2) the expiration of the Feasibility Period. This Agreement shall terminate and Buyer shall receive a refund of the earnest money, less any costs advanced or committed for Buyer, unless within five (5) days of Buyer's notice of such objections (1) Seller agrees, in writing, to remove all objectionable provisions or (2) Buyer notifies Seller that Buyer waives any objections which Seller does not agree to remove. If any new title matters are disclosed in a supplemental title report, then the preceding termination, objection and waiver provisions shall apply to the new title matters except that Buyer's notice of objections must be delivered within five (5) days of delivery of the supplemental report and Seller's response or Buyer's waiver must be delivered within two (2) days of Buyer's notice of objections. The closing date shall be extended to the extent necessary to

INITIALS: BUYER _____ DATE __7/7/2015__ SELLER __CA__ DATE __2-13-15__

BUYER _____ DATE _____ SELLER _____ DATE _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

DocuSign Envelope ID: 5A70565E-E6CD-4E97-B00E-C38093D9628C

© Commercial Brokers Association
2011
ALL RIGHTS RESERVED

CBA Form PS-1A
Purchase & Sale Agreement
Rev. 1/2011
Page 4 of 13

## COMMERCIAL & INVESTMENT REAL ESTATE
### PURCHASE & SALE AGREEMENT
### (CONTINUED) .

permit time for these notices. Buyer shall not be required to object to any mortgage or deed of trust liens, or the statutory lien for real property taxes, and the same shall not be deemed to be Permitted Exceptions; provided, however, that the lien securing any financing which Buyer has agreed to assume shall be a Permitted Exception. Except for the foregoing, those provisions not objected to or for which Buyer waived its objections shall be referred to collectively as the "Permitted Exceptions." Seller shall cooperate with Buyer and the title company to clear objectionable title matters but shall not be required to incur any out-of-pocket expenses or liability other than payment of monetary encumbrances not assumed by Buyer and proration of real property taxes, and Seller shall provide an owner's affidavit containing the information and reasonable covenants requested by the title company. The title policy shall contain no exceptions other than the General Exclusions and Exceptions common to such form of policy and the Permitted Exceptions.

7. **CLOSING OF SALE**. This sale shall be closed on ___or before 60 days of Feasibility Contingency removal___ ("Closing") by ___First American Title Insurance Co.___, ("Closing Agent") (Seller shall select the Closing Agent, if not completed). Buyer and Seller shall deposit with Closing Agent by 12:00 p.m. on the scheduled Closing date all instruments and monies required to complete the purchase in accordance with this Agreement. "Closing" shall be deemed to have occurred when the deed is recorded and the sale proceeds are available to Seller. Time is of the essence in the performance of this Agreement. Sale proceeds shall be considered available to Seller, even though they cannot be disbursed to Seller until the next business day after Closing. Notwithstanding the foregoing, if Seller informed Buyer during the Feasibility Period that Seller's underlying financing requires that it be defeased and may not be paid off, then Closing shall be conducted in accordance with the three-day closing process described in CBA Form PS_D. This Agreement is intended to constitute escrow instructions to Closing Agent. Buyer and Seller will provide any supplemental instructions requested by Closing Agent provided the same are consistent with this Agreement.

8. **CLOSING COSTS AND PRORATIONS.** Seller shall deliver an updated rent roll to Closing Agent not later than two (2) days before the scheduled Closing date in the form required by Section 5(e) and any other information reasonably requested by Closing Agent to allow Closing Agent to prepare a settlement statement for Closing. Seller certifies that the information contained in the rent roll is correct as of the date submitted. Seller shall pay the premium for the owner's standard coverage title policy. Buyer shall pay the excess premium attributable to any extended coverage or endorsements requested by Buyer, and the cost of any survey required in connection with the same. Seller and Buyer shall each pay one-half of the escrow fees. Any real estate excise taxes shall be paid by the party who bears primary responsibility for payment under the applicable statute or code. Real and personal property taxes and assessments payable in the year of closing; collected rents on any existing tenancies; interest; utilities; and other operating expenses shall be pro-rated as of Closing. If tenants pay any of the foregoing expenses directly, then Closing Agent shall only pro rata those expenses paid by Seller. Buyer shall pay to Seller at Closing an additional sum equal to any utility deposits or mortgage reserves for assumed financing for which Buyer receives the benefit after Closing. Buyer shall pay all costs of financing including the premium for the lender's title policy. If the Property was taxed under a deferred classification prior to Closing, then Seller shall pay all taxes, interest, penalties, deferred taxes or similar items which result from removal of the Property from the deferred classification. At Closing, all refundable deposits on tenancies shall be credited to Buyer or delivered to Buyer for deposit in a trust account if required by state or local law. Buyer shall pay any sales or use tax applicable to the transfer of personal property included in the sale.

a. **Unpaid Utility Charges.** Buyer and Seller ☐WAIVE ☒ DO NOT WAIVE (do not waive if neither box checked) the right to have the Closing Agent disburse closing funds necessary to satisfy unpaid utility charges affecting the Property pursuant to RCW 60.80. If "do not waive" is checked, then attach CBA Form UA ("Utility Charges" Addendum) to this Agreement.

INITIALS: BUYER _____ DATE 7/7/15 SELLER _CJA_ DATE 7-13-15

BUYER _____ DATE _____ SELLER _____ DATE _____

PSA – Meier LLC

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

DocuSign Envelope ID: 0F441FC9-20A4-4D76-8B32-6D0C4F9AD01C

© Commercial Brokers Association
2011
ALL RIGHTS RESERVED **CBA**

CBA Form PS_1A
Purchase & Sale Agreement
Rev. 1/2011
Page 5 of 13

## COMMERCIAL & INVESTMENT REAL ESTATE
## PURCHASE & SALE AGREEMENT
## (CONTINUED)

9. **POST-CLOSING ADJUSTMENTS, COLLECTIONS, AND PAYMENTS.** After Closing, Buyer and Seller shall reconcile the actual amount of revenues or liabilities upon receipt or payment thereof to the extent those items were prorated or credited at Closing based upon estimates. Any bills or invoices received by Buyer after Closing which relate to services rendered or goods delivered to the Seller or the Property prior to Closing shall be paid by Seller upon presentation of such bill or invoice. At Buyer's option, Buyer may pay such bill or invoice and be reimbursed the amount paid plus interest at the rate of 12% per annum beginning fifteen (15) days from the date of Buyer's written demand to Seller for reimbursement until such reimbursement is made. Notwithstanding the foregoing, if tenants pay certain expenses based on estimates subject to a post-closing reconciliation to the actual amount of those expenses, then Buyer shall be entitled to any surplus and shall be liable for any credit resulting from the reconciliation. Rents collected from each tenant after Closing shall be applied first to rentals due most recently from such tenant for the period after closing, and the balance shall be applied for the benefit of Seller for delinquent rentals owed for a period prior to closing.  The amounts applied for the benefit of Seller shall be turned over by Buyer to Seller promptly after receipt.  Seller shall be entitled to pursue any lawful methods of collection of delinquent rents but shall have no right to evict tenants after Closing.

10. **OPERATIONS PRIOR TO CLOSING.** Prior to Closing, Seller shall continue to operate the Property in the ordinary course of its business and maintain the Property in the same or better condition than as existing on the date of Mutual Acceptance but shall not be required to repair material damage from casualty except as otherwise provided in this Agreement. After the Feasibility Period, Seller shall not enter into or modify existing rental agreements or leases (except that Seller may enter into, modify, extend, renew or terminate residential rental agreements or residential leases in the ordinary course of its business), service contracts, or other agreements affecting the Property which have terms extending beyond Closing without first obtaining Buyer's consent, which shall not be unreasonably withheld.

11. **POSSESSION.** Buyer shall be entitled to possession  [X] on closing  [ ] _____ (on closing, if not completed). Buyer shall accept possession subject to all tenancies disclosed to Buyer during the Feasibility Period.

12. **SELLER'S REPRESENTATIONS.** Except as disclosed to or known by Buyer prior to the satisfaction or waiver of the feasibility contingency stated in Section 5 above, including in the books, records and documents made available to Buyer, or in the title report or any supplemental report or documents referenced therein, Seller represents that, to the best of Seller's actual knowledge, each of the following is true as of the date hereof: (a) Seller is authorized to enter into the Agreement, to sell the Property, and to perform its obligations under the Agreement; (b) The books, records, leases, agreements and other items delivered to Buyer pursuant to this Agreement comprise all material documents in Seller's possession or control regarding the operation and condition of the Property; (c) Seller has not received any written notices that the Property or the business conducted thereon violate any applicable laws, regulations, codes and ordinances; (d) Seller has all certificates of occupancy, permits, and other governmental consents necessary to own and operate the Property for its current use; (e) There is no pending or threatened litigation which would adversely affect the Property or Buyer's ownership thereof after Closing; (f) There is no pending or threatened condemnation or similar proceedings affecting the Property, and the Property is not within the boundaries of any planned or authorized local improvement district; (g) Seller has paid (except to the extent prorated at Closing) all local, state and federal taxes (other than real and personal property taxes and assessments described in Section 8 above) attributable to the period prior to closing which, if not paid, could constitute a lien on Property (including any personal property), or for which Buyer may be held liable after Closing; (h) Seller is not aware of any concealed material defects in the Property except as disclosed to Buyer in writing during the Feasibility Period; (i) There are no Hazardous Substances (as defined below) currently located in, on, or under the Property in a manner or quantity that presently violates any Environmental Law (as defined below); there are no underground storage tanks located on the Property; and there is no pending or threatened investigation or

INITIALS: BUYER _____CG_____ DATE __7/7/2015__   SELLER __CA__ DATE _7-13-15_

BUYER _____ DATE _____   SELLER _____ DATE _____

PSA - Meter LLC

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

DocuSign Envelope ID: 0F441FC9-20A4-4D76-8B32-6D0C4F9AD01C

© Commercial Brokers Association
2011
ALL RIGHTS RESERVED
CBA


CBA Form PS_1A
Purchase & Sale Agreement
Rev. 1/2011
Page 6 of 13

### COMMERCIAL & INVESTMENT REAL ESTATE
### PURCHASE & SALE AGREEMENT
### (CONTINUED)

remedial action by any governmental agency regarding the release of Hazardous Substances or the violation of Environmental Law at the Property. As used herein, the term "Hazardous Substances" shall mean any substance or material now or hereafter defined or regulated as a hazardous substance, hazardous waste, toxic substance, pollutant, or contaminant under any federal, state, or local law, regulation, or ordinance governing any substance that could cause actual or suspected harm to human health or the environment ("Environmental Law"). The term "Hazardous Substances" specifically includes, but is not limited to, petroleum, petroleum by-products, and asbestos.

If prior to Closing Seller or Buyer discovers any information which would cause any of the representations above to be false if the same were deemed made as of the date of such discovery, then the party discovering the same shall promptly notify the other party in writing. If the newly-discovered information will result in costs or liability to Buyer in excess of the lesser of $100,000 or five percent (5%) of the purchase price stated in this Agreement, or will materially adversely affect Buyer's intended use of the Property, then Buyer shall have the right to terminate the Agreement and receive a refund of its earnest money. Buyer shall give notice of termination within five (5) days of discovering or receiving written notice of the new information. Nothing in this paragraph shall prevent Buyer from pursuing its remedies against Seller if Seller had actual knowledge of the newly-discovered information such that a representation provided for above was false.

13. **AS-IS.** Except for those representations and warranties specifically included in this Agreement: (i) Seller makes no representations or warranties regarding the Property; (ii) Seller hereby disclaims, and Buyer hereby waives, any and all representations or warranties of any kind, express or implied, concerning the Property or any portion thereof, as to its condition, value, compliance with laws, status of permits or approvals, existence or absence of hazardous material on site, occupancy rate or any other matter of similar or dissimilar nature relating in any way to the Property, including the warranties of fitness for a particular purpose, tenantability, habitability and use; (iii) Buyer otherwise takes the Property "AS IS;" and (iv) Buyer represents and warrants to Seller that Buyer has sufficient experience and expertise such that it is reasonable for Buyer to rely on its own pre-closing inspections and investigations.

14. **PERSONAL PROPERTY.**
a. This sale includes all right, title and interest of Seller to the following tangible personal property: ☐ None ☒ That portion of the personal property located on and used in connection with the Property, which Seller will itemize in an Exhibit to be attached to this Agreement within ten (10) days of Mutual Acceptance (None, if not completed). The value assigned to the personal property shall be $2,000.00 (if not completed, the County-assessed value if available, and if not available, the fair market value determined by an appraiser selected by the Listing Broker and Selling Broker). Seller warrants title to, but not the condition of, the personal property and shall convey it by bill of sale.

b. In addition to the leases and Vendor Contracts assumed by Buyer pursuant to Section 5(a) above, this sale includes all right, title and interest of Seller to the following intangible property now or hereafter existing with respect to the Property including without limitation: all rights-of-way, rights of ingress or egress or other interests in, on, or to, any land, highway, street, road, or avenue, open or proposed, in, on, or across, in front of, abutting or adjoining the Property; all rights to utilities serving the Property; all drawings, plans, specifications and other architectural or engineering work product; all governmental permits, certificates, licenses, authorizations and approvals; all rights, claims, causes of action, and warranties under contracts with contractors, engineers, architects, consultants or other parties associated with the Property; all utility, security and other deposits and reserve accounts made as security for the fulfillment of any of Seller's obligations; any name of or telephone numbers for the Property and related trademarks, service marks or trade dress; and guaranties, warranties or other assurances of performance received.

INITIALS: BUYER _CG_ DATE 7/7/2015   SELLER _CIA_ DATE 7-13-15
BUYER _____ DATE _____   SELLER _____ DATE _____

DocuSign Envelope ID: 0F441FC9-20A4-4D76-BB32-BD0C4F8AD01C

© Commercial Brokers Association
2011
ALL RIGHTS RESERVED



CBA Form PS_1A
Purchase & Sale Agreement
Rev. 1/2011
Page 7 of 13

## COMMERCIAL & INVESTMENT REAL ESTATE
## PURCHASE & SALE AGREEMENT
### (CONTINUED)

15. **CONDEMNATION AND CASUALTY.** Seller bears all risk of loss until Closing, and thereafter Buyer shall bear the risk of loss. Buyer may terminate this Agreement and obtain a refund of the earnest money if improvements on the Property are destroyed or materially damaged by casualty before Closing, or if condemnation proceedings are commenced against all or a portion of the Property before Closing. Damage will be considered material if the cost of repair exceeds the lesser of $100,000 or five percent (5%) of the purchase price stated in this Agreement. Alternatively, Buyer may elect to proceed with closing, in which case, at Closing, Seller shall assign to Buyer all claims and right to proceeds under any property insurance policy and shall credit to Buyer at Closing the amount of any deductible provided for in the policy.

16. **FIRPTA - TAX WITHHOLDING AT CLOSING.** Closing Agent is instructed to prepare a certification (CBA or NWMLS Form 22E, or equivalent) that Seller is not a "foreign person" within the meaning of the Foreign Investment in Real Property Tax Act, and Seller shall sign it on or before Closing. If Seller is a foreign person, and this transaction is not otherwise exempt from FIRPTA, Closing Agent is instructed to withhold and pay the required amount to the Internal Revenue Service.

17. **CONVEYANCE.** Title shall be conveyed by a Statutory Warranty Deed subject only to the Permitted Exceptions. If this Agreement is for conveyance of Seller's vendee's interest in a Real Estate Contract, the Statutory Warranty Deed shall include a contract vendee's assignment sufficient to convey after acquired title. At Closing, Seller and Buyer shall execute and deliver to Closing Agent CBA Form No. PS-AS Assignment and Assumption Agreement transferring all leases and Vendor Contracts assumed by Buyer pursuant to Section 5(a) and all intangible property transferred pursuant to Section 14(b).

18. **NOTICES AND COMPUTATION OF TIME.** Unless otherwise specified, any notice required or permitted in, or related to, this Agreement (including revocations of offers and counteroffers) must be in writing. Notices to Seller must be signed by at least one Buyer and must be delivered to Seller and Listing Broker with a courtesy copy to any other party identified as a recipient of notices in Section 28. A notice to Seller shall be deemed delivered only when received by Seller, Listing Broker, or the licensed office of Listing Broker. Notices to Buyer must be signed by at least one Seller and must be delivered to Buyer, with a copy to Selling Broker and with a courtesy copy to any other party identified as a recipient of notices in Section 28. A notice to Buyer shall be deemed delivered only when received by Buyer, Selling Broker, or the licensed office of Selling Broker. Selling Broker and Listing Broker have no responsibility to advise of receipt of a notice beyond either phoning the represented party or causing a copy of the notice to be delivered to the party's address provided in this Agreement. Buyer and Seller shall keep Selling Broker and Listing Broker advised of their whereabouts in order to receive prompt notification of receipt of a notice. If any party is not represented by a licensee, then notices must be delivered to and shall be effective when received by that party at the address, fax number, or email indicated in Section 28.

Unless otherwise specified in this Agreement, any period of time in this Agreement shall mean Pacific Time and shall begin the day after the event starting the period and shall expire at 5:00 p.m. of the last calendar day of the specified period of time, unless the last day is a Saturday, Sunday or legal holiday as defined in RCW 1.16.050, in which case the specified period of time shall expire on the next day that is not a Saturday, Sunday or legal holiday. Any specified period of five (5) days or less shall not include Saturdays, Sundays or legal holidays. Notwithstanding the foregoing, references to specific dates or times or number of hours shall mean those dates, times or number of hours; provided, however, that if the Closing Date falls on a Saturday, Sunday, or legal holiday as defined in RCW 1.16.050, or a date when the county recording office is closed, then the Closing Date shall be the next regular business day.

INITIALS: BUYER _____ DATE 7/7/2015   SELLER _DA_ DATE 7-13-15

BUYER _____ DATE _____   SELLER _____ DATE _____

PSA - Meier LLC

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

DocuSign Envelope ID: 0F441FC9-20A4-4D76-8B32-6D0C4F9AD01C

© Commercial Brokers Association
2011
ALL RIGHTS RESERVED



CBA Form PS_1A
Purchase & Sale Agreement
Rev. 1/2011
Page 8 of 18

## COMMERCIAL & INVESTMENT REAL ESTATE
## PURCHASE & SALE AGREEMENT
### (CONTINUED)

19. **AGENCY DISCLOSURE.** At the signing of this Agreement,

Selling Broker <u>WESTLAKE ASSOCIATES, INC. - Travis Kannier & Ian Brown</u>
Represented <u>the Buyer</u>
and the Listing Broker <u>WESTLAKE ASSOCIATES, INC. - Allan Friedman & Nicholas T. Gill</u>
represented <u>the Seller</u>

Selling Firm, Selling Firm's Designated Broker, Selling Broker's Branch Manager (if any) and Selling Broker's Managing Broker (if any) represent the same party that Selling Broker represents. Listing Firm, Listing Firm's Designated Broker, Listing Broker's Branch Manager (if any), and Listing Broker's Managing Broker (if any) represent the same party that the Listing Broker represents. If Selling Broker and Listing Broker are different persons affiliated with the same Firm, then both Buyer and Seller confirm their consent to the Brokers' Designated Broker, Branch Manager (if any), and Managing Broker (if any) representing both parties as a dual agent. If Selling Broker and Listing Broker are the same person representing both parties, then both Buyer and Seller confirm their consent to that person and his/her Designated Broker, Branch Manager (if any), and Managing Broker (if any) representing both parties as dual agents. All parties acknowledge receipt of the pamphlet entitled "The Law of Real Estate Agency."

20. **ASSIGNMENT.** Buyer ☐ may ☒ may not (may not, if not completed) assign this Agreement, or Buyer's rights hereunder, without Seller's prior written consent, unless provided otherwise herein. If the "may not" option is selected and the words "and/or assigns" or similar words are used to identify the Buyer, then this Agreement may be assigned with notice to Seller but without Seller's consent only to an entity which is controlled by or under common control with the Buyer identified in this Agreement. Any other assignment requires Seller's consent. The party identified as the initial Buyer shall remain responsible for those obligations of Buyer stated in this Agreement notwithstanding any assignment and, if this Agreement provides for Seller to finance a portion of the purchase price, then the party identified as the initial Buyer shall guarantee payment of the Seller financing.

21. **DEFAULT AND ATTORNEY'S FEE.**
(a) Buyer's default. In the event Buyer fails, without legal excuse, to complete the purchase of the Property, then *(check one)*:

☒ Seller may terminate this Agreement and keep the earnest money as liquidated damages as the sole and exclusive remedy available to Seller for such failure; or

☐ Seller may, at its option, (a) terminate this Agreement and keep as liquidated damages the earnest money as the sole and exclusive remedy available to Seller for such failure, (b) bring suit against Buyer for Seller's actual damages, (c) bring suit to specifically enforce this Agreement and recover any incidental damages, or (d) pursue any other rights or remedies available at law or equity.

(b) Seller's default. In the event Seller fails, without legal excuse, to complete the sale of the Property, then *(check one)*:

☒ As Buyer's sole remedy, Buyer may either (a) terminate this Agreement and recover all earnest money or fees paid by Buyer whether or not the same are identified as refundable or applicable to the purchase price; or (b) bring suit to specifically enforce this Agreement and recover incidental damages, provided, however, Buyer must file suit within sixty (60) days from the scheduled date of closing or from the date Seller has informed Buyer in writing that Seller will not proceed with closing, whichever is earlier; or

☐ Buyer may, at its option, (a) bring suit against Seller for Buyer's actual damages, (b) bring suit to specifically enforce this Agreement and recover any incidental damages, or (c) pursue any other rights or remedies available at law or equity.

INITIALS: BUYER _____CG_____ DATE _7/7/2015_    SELLER __CH__ DATE _7-13-15_

BUYER _____ DATE _____    SELLER _____ DATE _____

PSA - Meier LLC

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.ziplogix.com

DocuSign Envelope ID: 0F441FC9-20A4-4D76-8B32-6D0C4F9AD01C

© Commercial Brokers Association
2011
ALL RIGHTS RESERVED 

CBA Form PS_1A
Purchase & Sale Agreement
Rev. 1/2011
Page 9 of 18

## COMMERCIAL & INVESTMENT REAL ESTATE
## PURCHASE & SALE AGREEMENT
## (CONTINUED)

Neither Buyer nor Seller may recover consequential damages such as lost profits. If Buyer or Seller institutes suit against the other concerning this Agreement, the prevailing party is entitled to reasonable attorneys' fees and expenses. In the event of trial, the amount of the attorney's fee shall be fixed by the court. The venue of any suit shall be the county in which the Property is located, and this Agreement shall be governed by the laws of the state where the Property is located.

22. MISCELLANEOUS PROVISIONS.

    a. **Complete Agreement.** This Agreement and any addenda and exhibits thereto state the entire understanding of Buyer and Seller regarding the sale of the Property. There are no verbal or other written agreements which modify or affect the Agreement.

    b. **Counterpart Signatures.** This Agreement may be signed in counterpart, each signed counterpart shall be deemed an original, and all counterparts together shall constitute one and the same agreement.

    c. **Electronic Delivery.** Electronic delivery of documents (e.g., transmission by facsimile or email) including signed offers or counteroffers and notices shall be legally sufficient to bind the party the same as delivery of an original. At the request of either party, or the Closing Agent, the parties will replace electronically delivered offers or counteroffers with original documents.

    d. **Section 1031 Like-Kind Exchange.** If either Buyer or Seller intends for this transaction to be a part of a Section 1031 like-kind exchange, then the other party agrees to cooperate in the completion of the like-kind exchange so long as the cooperating party incurs no additional liability in doing so, and so long as any expenses (including attorneys fees and costs) incurred by the cooperating party that are related only to the exchange are paid or reimbursed to the cooperating party at or prior to Closing. Notwithstanding Section 20 above, any party completing a Section 1031 like-kind exchange may assign this Agreement to its qualified intermediary or any entity set up for the purposes of completing a reverse exchange.

23. ACCEPTANCE; COUNTEROFFERS. Seller has until midnight of _____ (if not filled in, the third business day) following the day Buyer delivers the offer to accept this offer, unless sooner withdrawn. If this offer is not timely accepted, it shall lapse and the earnest money shall be refunded to Buyer. If either party makes a future counteroffer, the other party shall have until 5:00 p.m. on the <u>second</u> business day (if not filled in, the second business day) following receipt to accept the counteroffer, unless sooner withdrawn. If the counteroffer is not timely accepted or countered, this Agreement shall lapse and the earnest money shall be refunded to the Buyer. No acceptance, offer or counteroffer from the Buyer is effective until a signed copy is received by the Seller, the Listing Broker or the licensed office of the Listing Broker. No acceptance, offer or counteroffer from the Seller is effective until a signed copy is received by the Buyer, the Selling Broker or the licensed office of the Selling Broker. "Mutual Acceptance" shall occur when the last counteroffer is signed by the offeree, and the fully-signed counteroffer has been received by the offeror, his or her broker, or the licensed office of the broker. If any party is not represented by a broker, then notices must be delivered to and shall be effective when received by that party.

24. INFORMATION TRANSFER. In the event this Agreement is terminated, Buyer agrees to deliver to Seller within ten (10) days of Seller's written request copies of all materials received from Seller and any non-privileged plans, studies, reports, inspections, appraisals, surveys, drawings, permits, applications or other development work product relating to the Property in Buyer's possession or control as of the date this Agreement is terminated.

INITIALS: BUYER _____ DATE _7/7/2015_ SELLER _CA_ DATE _7-13-15_

            BUYER _____ DATE _____ SELLER _____ DATE _____

PSA - Meter LLC          Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

DocuSign Envelope ID: 0F441FC9-20A4-4D76-8B32-6D0C4F8AD01C

© Commercial Brokers Association
2011
ALL RIGHTS RESERVED          CBA

CBA Form PS_1A
Purchase & Sale Agreement
Rev. 1/2011
Page 10 of 13

## COMMERCIAL & INVESTMENT REAL ESTATE
## PURCHASE & SALE AGREEMENT
### (CONTINUED)

25. **CONFIDENTIALITY.** Until and unless closing has been consummated, Buyer and Seller shall follow reasonable measures to prevent unnecessary disclosure of information obtained in connection with the negotiation and performance of this Agreement. Neither party shall use or knowingly permit the use of any such information in any manner detrimental to the other party.

26. **SELLER'S ACCEPTANCE AND BROKERAGE AGREEMENT.** Seller agrees to sell the Property on the terms and conditions herein, and further agrees to pay a commission in a total amount computed in accordance with the listing or commission agreement. If there is no written listing or commission agreement, Seller agrees to pay a commission of _____ % of the sales price or $_____. The commission shall be apportioned between Listing Firm and Selling Firm as specified in the listing or any co-brokerage agreement. If there is no listing or written co-brokerage agreement, then Listing Firm shall pay to Selling Firm a commission of _____% of the sales price or $_____. Seller assigns to Listing Firm and Selling Firm a portion of the sales proceeds equal to the commission. If the earnest money is retained as liquidated damages, any costs advanced or committed by Listing Firm or Selling Firm for Buyer or Seller shall be reimbursed or paid therefrom, and the balance shall be paid one-half to Seller and one-half to Listing Firm and Selling Firm according to the listing agreement and any co-brokerage agreement. In any action by Listing Firm or Selling Firm to enforce this Section, the prevailing party is entitled to reasonable attorneys' fees and expenses. Neither Listing Firm nor Selling Firm are receiving compensation from more than one party to this transaction unless disclosed on an attached addendum, in which case Buyer and Seller consent to such compensation. The Property described in attached Exhibit A is commercial real estate. Notwithstanding Section 25 above, the pages containing this Section, the parties' signatures and an attachment describing the Property may be recorded.

27. **LISTING BROKER AND SELLING BROKER DISCLOSURE.** EXCEPT AS OTHERWISE DISCLOSED IN WRITING TO BUYER OR SELLER, THE SELLING BROKER, LISTING BROKER, AND FIRMS HAVE NOT MADE ANY REPRESENTATIONS OR WARRANTIES OR CONDUCTED ANY INDEPENDENT INVESTIGATION CONCERNING THE LEGAL EFFECT OF THIS AGREEMENT, BUYER'S OR SELLER'S FINANCIAL STRENGTH, BOOKS, RECORDS, REPORTS, STUDIES, OR OPERATING STATEMENTS; THE CONDITION OF THE PROPERTY OR ITS IMPROVEMENTS; THE FITNESS OF THE PROPERTY FOR BUYER'S INTENDED USE; OR OTHER MATTERS RELATING TO THE PROPERTY, INCLUDING WITHOUT LIMITATION, THE PROPERTY'S ZONING, BOUNDARIES, AREA, COMPLIANCE WITH APPLICABLE LAWS (INCLUDING LAWS REGARDING ACCESSIBILITY FOR DISABLED PERSONS), OR HAZARDOUS OR TOXIC MATERIALS INCLUDING MOLD OR OTHER ALLERGENS. SELLER AND BUYER ARE EACH ADVISED TO ENGAGE QUALIFIED EXPERTS TO ASSIST WITH THESE DUE DILIGENCE AND FEASIBILITY MATTERS, AND ARE FURTHER ADVISED TO SEEK INDEPENDENT LEGAL AND TAX ADVICE RELATED TO THIS AGREEMENT.

INITIALS: BUYER _____*QG*_____ DATE _7/7/2015_   SELLER __*DA*__ DATE _7-13-15_

BUYER _____ DATE _____   SELLER _____ DATE _____

PSA - Meter LLC

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

DocuSign Envelope ID: 0F441FC9-20A4-4D76-8B32-6D0C4F9AD01C

© Commercial Brokers Association
2011
ALL RIGHTS RESERVED

CBA Form PS_1A
Purchase & Sale Agreement
Rev. 1/2011
Page 11 of 13

## COMMERCIAL & INVESTMENT REAL ESTATE
## PURCHASE & SALE AGREEMENT

28. IDENTIFICATION OF THE PARTIES. The following is the contact information for the parties involved in this Agreement:

**Buyer**

Contact: Chris Gurdjian, Managing Member
         METER LLC
Address: PO Box 22812
         Seattle, WA 98122
Business Phone:
Mobile Phone:
Fax:
Email:

**Selling Firm**

Name: WESTLAKE ASSOCIATES, INC.
Assumed Name (if applicable):
Selling Broker: Travis Kannler and Ian Brown
Address: 1200 Westlake Avenue North, Suite 310
         Seattle, WA 98109-3528
Business Phone: (206)505-9428 TK
Mobile Phone: (206)302-9211 TK
Email: kannler@westlakeassociates.com
Fax: (206)505-9439
MLS Office No.: 9262

**Licensed Office of Selling Broker**

Address: Ian Brown
         WESTLAKE ASSOCIATES, INC.
Business Phone: (206)505-9414 Brown
Fax: (206)505-9439
Email: Ian@westlakeassociates.com
CBA Office No.:9262

**Courtesy Copy of Notices to Buyer to:**

Name:
Address:

Business Phone:
Mobile Phone:
Fax:
Email:

**Seller**

Contact: Carol Hayes, Executive Director
         RECOVERY CENTERS OF KING COUNTY
Address: 464 - 12th Avenue
         Seattle, WA 98122
Business Phone:
Mobile Phone:
Fax:
Email:

**Listing Firm**

Name: WESTLAKE ASSOCIATES, INC.
Assumed Name (if applicable):
Listing Broker:Allan Friedman and Nicholas T. Gill
Address:1200 Westlake Avenue North, Suite 310
        Seattle, WA 98109-3528
Business Phone:(206)505-9406 AF
Mobile Phone: (206)850-6659 AF
Email: allanf@westlakeassociates.com
Fax: (206)505-9439
MLS Office No.: 9262

**Licensed Office of Listing Broker**

Address:Nicholas T. Gill
        WESTLAKE ASSOCIATES, INC.
Business Phone:(206)505-9410 NG
Fax:(206)505-9439
Email: gill@westlakeassociates.com
CBA Office No.: 9262

**Courtesy Copy of Notices to Seller to:**

Name:
Address:

Business Phone:
Mobile Phone:
Fax:
Email:

INITIALS: BUYER _CG_ DATE 7/7/2015     SELLER _CIA_ DATE 7-13-15
          BUYER ___ DATE ___           SELLER ___ DATE ___

PSA - Meter LLC

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Case 15-13060-TWD    Doc 129-3    Filed 07/17/15    Ent. 07/17/15 17:36:28    Pg. 11 of 18

© Commercial Brokers Association
2011
ALL RIGHTS RESERVED

CBA Form PS_1A
Purchase & Sale Agreement
Rev. 1/2011
Page 12 of 13

### COMMERCIAL & INVESTMENT REAL ESTATE
### PURCHASE & SALE AGREEMENT
### (CONTINUED)

IN WITNESS WHEREOF, the parties have signed this Agreement intending to be bound.

Buyer <u>METER LLC, a Washington LLC</u>
     Printed name and type of entity

Buyer _*Chris Gurdjian*_____ Manager
          Signature and title
By: Chris Gurdjian, Managing Member

Date signed _____7/7/2015_____

Buyer _____
          Printed name and type of entity

Buyer _____
          Signature and title

Date signed _____

Seller <u>RECOVERY CENTERS OF KING COUNTY</u>
     Printed name and type of entity

Seller _*Carol Hayes*_____
          Signature and title
By: Carol Hayes, Executive Director

Date signed _7 - 13 - 15_

Seller _____
          Printed name and type of entity

Seller _____
          Signature and title

Date signed _____

PER ATTACHED SELLER ADDENDUM

INITIALS: BUYER _CG_ DATE _7/7/2015_  SELLER _CH_ DATE _7 - 13 - 15_
        BUYER _____ DATE _____  SELLER _____ DATE _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          PSA - Meter LLC

DocuSign Envelope ID: 0F441FC9-20A4-4D76-8B32-6D0C4F9AD01C

© Commercial Brokers Association
2011
ALL RIGHTS RESERVED 

CBA Form PS_1A
Purchase & Sale Agreement
Rev. 1/2011
Page 13 of 13

## COMMERCIAL & INVESTMENT REAL ESTATE
## PURCHASE & SALE AGREEMENT
## (CONTINUED)

### EXHIBIT A*
[Legal Description]

<u>PROPERTY:</u> the Wright Building, 464 - 12th Avenue, Seattle, WA  98122

<u>TAX ACCOUNT NUMBER:</u> 794930 0005 06

<u>LEGAL DESCRIPTION (per Deed of Trust With Assignment of Rents, Security Agreement and Fixture Filing dated November 29, 2006, between Recovery Centers of King County as the Grantor and Washington Health Care facilities Authority as the Grantee, as recorded on November 29, 2006, under King County Recording Number 20061129000448):</u>

<u>Lots 1, 2, 3 and 4, Block A, W.C. Squire's Replat of Block Nine of Squire Park Addition to the City of Seattle, according to the plat thereof recorded in Volume 9 of Plats, page 84, in King County, Washington;</u>

<u>EXCEPT that portion of Lot 1 heretofore condemned in King County Superior Court Cause No. 61476 for 12th Avenue, as provided under Ordinance No. 17972 of the City of Seattle;</u>

<u>SUBJECT TO easements, restrictions, reservations, covenants and conditions of record, if any.</u>

* To ensure accuracy in the legal description, consider substituting the legal description contained in the preliminary commitment for title insurance or a copy of the Property's last vesting deed for this page. Do not neglect to label the substitution "Exhibit A." You should avoid transcribing the legal description because any error in transcription may render the legal description inaccurate and this Agreement void and unenforceable.

INITIALS: BUYER _____CG_____ DATE _7/7/2015_ SELLER __CA__ DATE _7-13-15_

         BUYER _____ DATE _____ SELLER _____ DATE _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

DocuSign Envelope ID: 0F441FC9-20A4-4D76-8B32-6D0C4F9AD01C

© Commercial Brokers Association
2011
ALL RIGHTS RESERVED

CBA Form PSA
Addendum/Amendment to PSA
Rev. 1/2011
Page 1 of 1

7/7/2015  ADDENDUM/AMENDMENT TO
PURCHASE AND SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated _____ July 7, 2015 _____,
(the "Agreement"), between ____ METER LLC, a Washington limited liability company, and/or Assigns
("Buyer"), and _____ RECOVERY CENTERS OF KING COUNTY, a non-profit organization
("Seller"), regarding the sale of the Property known as: the Wright Building, 464 - 12th Avenue, Seattle, WA
98122 _____ (the "Property").

IT IS AGREED BETWEEN THE SELLER AND BUYER AS FOLLOWS:

1. EXTENSION OF CLOSING DATE.  At Buyer's sole option, Buyer may extend the date of closing by
notifying Seller in writing no less than five (5) business days prior to the then scheduled date of closing,
whereupon the closing date of this transaction shall automatically be extended for an additional thirty
(30)days. In such case, Buyer agrees to place an extension fee in trust with the Closing Agent in an
amount equal to one percent (1%) of the gross purchase price, which extension fee shall be
non-refundable to the Buyer (except in the event of Seller's default and/or pursuant to Section 15 of the
Purchase and Sale Agreement) and shall be applicable to total purchase price at Closing.

2. INFORMATION TRANSFER.  The first sentence of Section 24 of the Purchase & Sale Agreement
shall be amended to read as follows:  In the event this Agreement is terminated, Buyer agrees to deliver
and assign all rights and interest therein, without warranty, to Seller within ten (10) days of Seller's
written request copies of all materials received from Seller and any non-privileged plans, studies, reports,
inspections, appraisals, surveys, drawings, permits, applications or other development work product
relating to the Property in Buyer's possession or control as of the date this Agreement is terminated.

3. CLOSING COSTS AND PRORATIONS.  In connection with Section 8 of the Purchase & Sale
Agreement, Seller shall deliver and assign to Buyer on closing all security, cleaning and any other
unearned deposits on tenancies made under Tenants' leases and/or rental agreements, including
non-refundable cleaning fees, other non-refundable fees and charges (if any), prepaid rent (if any) and the
amount of future rental credits including free rent incentives which carry over past the Closing Date (if
any).

4. EXTENSION OF CLOSING DATE.  If this sale cannot be closed by the specified date herein due to
circumstances beyond the control of the party whose performance is delayed, closing shall be extended
for up to fourteen (14) days beyond the then specified date of closing.

5. CONFLICT OF TERMS.  In the event any of the terms and/or conditions of this Addendum /
Amendment Agreement conflict with the Purchase and Sale Agreement, the terms of this Addendum /
Amendment Agreement shall prevail.

ALL OTHER TERMS AND CONDITIONS of the Agreement remain unchanged.

INITIALS: BUYER ____ CG ____ DATE __ 7/7/2015 __   SELLER __ CJA __ DATE 7-13-15
BUYER _____ DATE _____   SELLER _____ DATE _____

Westlake Associates, Inc. - Corporate, 1200 Westlake Avenue N, Ste 316 Seattle, WA 98109
Travis Kessler                    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com       Phone: 206-505-5415   Fax: 206-505-9430       PSA - Meter LLC -

DocuSign Envelope ID: 0F441FC9-20A4-4D76-8B32-6D0C4F9AD01C

© Commercial Brokers Association
2011
ALL RIGHTS RESERVED



CBA Form UA
Utility Addendum
Rev. 1/2011
Page 1 of 2

## UTILITY CHARGES ADDENDUM

The following is part of the Purchase and Sale Agreement dated _____ July 7, 2015 _____ between

_____ METER LLC, a Washington limited liability company, and/or Assigns _____ ("Buyer") and

_____ RECOVERY CENTERS OF KING COUNTY, a non-profit organization _____ ("Seller") concerning

_____ the Wright Building, 464 - 12th Avenue, Seattle, WA 98122 _____ (the "Property").

Pursuant to RCW 60.80, Buyer and Seller request the Closing Agent to administer the disbursement of closing funds necessary to satisfy unpaid utility charges affecting the Property. The names and addresses of all utilities providing service to the Property and having lien rights are as follows:

Water District:

Name _____

Address _____

City, State, Zip _____

Sewer District:

Name _____

Address _____

City, State, Zip _____

Irrigation District:

Name _____

Address _____

City, State, Zip _____

Garbage:

Name _____

Address _____

City, State, Zip _____

Electricity:

Name _____

Address _____

City, State, Zip _____

INITIALS: BUYER _CG_ DATE 7/7/2015 SELLER _DA_ DATE 7-13-15

BUYER _____ DATE _____ SELLER _____ DATE _____

Westlake Associates, Inc. - Corporate, 1200 Westlake Avenue N, Ste 310 Seattle, WA 98109
Travis Kessler
Phone: 206-505-9428    Fax: 206-505-9439    USA - Meter LLC -
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

DocuSign Envelope ID: 0F441FC9-20A4-4D78-8B32-6D0C4F6AD01C

© Commercial Brokers Association
2011
ALL RIGHTS RESERVED

CBA

CBA Form UA
Utility Addendum
Rev. 1/2011
Page 2 of 2

# UTILITY CHARGES ADDENDUM
## (CONTINUED)

Gas:

Name _____

Address _____

City, State, Zip _____

Special District(s):
(local improvement districts
or utility local improvement)

Name _____

Address _____

City, State, Zip _____

IF THE ABOVE INFORMATION HAS NOT BEEN FILLED IN AT THE TIME OF MUTUAL ACCEPTANCE OF THIS AGREEMENT, THEN (1) WITHIN _____ DAYS (5 DAYS IF NOT FILLED IN) OF MUTUAL ACCEPTANCE OF THIS AGREEMENT, SELLER SHALL PROVIDE THE LISTING BROKER, SELLING BROKER, OR CLOSING AGENT WITH THE NAMES AND ADDRESSES OF ALL UTILITY PROVIDERS HAVING LIEN RIGHTS AFFECTING THE PROPERTY AND (2) BUYER AND SELLER AUTHORIZE LISTING BROKER, SELLING BROKER OR CLOSING AGENT TO INSERT INTO THIS ADDENDUM THE NAMES AND ADDRESSES OF THE UTILITY PROVIDERS IDENTIFIED BY SELLER. SELLER ACKNOWLEDGES THAT THIS ADDENDUM DOES NOT RELIEVE SELLER OF ITS OBLIGATION TO PAY UTILITY CHARGES, BILLED OR UNBILLED OR EVIDENCED BY A RECORDED LIEN OR NOT. THE PARTIES UNDERSTAND THAT NEITHER LISTING BROKER NOR SELLING BROKER IS RESPONSIBLE FOR PAYING UTILITY CHARGES OR FOR INSURING THAT THEY ARE PAID BY ANY OTHER PERSON.

INITIALS: BUYER _CG_ ___ DATE _7/7/2015_ SELLER _CA_ DATE _7-13-15_

BUYER _____ DATE _____ SELLER _____ DATE _____

PSA - Meter LLC

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

© Commercial Brokers Association
2011
ALL RIGHTS RESERVED

CBA Form PSA
Addendum/Amendment to PSA
Rev. 1/2011
Page 1 of 1

## 7/8/2015  ADDENDUM/AMENDMENT TO
## PURCHASE AND SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated _____ July 7, 2015 _____
(the "Agreement"), between _____ METER LLC, a Washington limited liability company, and/or Assigns
("Buyer"), and _____ RECOVERY CENTERS OF KING COUNTY, a non-profit organization
("Seller"), regarding the sale of the Property known as: the Wright Building, 464 - 12th Avenue, Seattle, WA
98122 _____ (the "Property").

IT IS AGREED BETWEEN THE SELLER AND BUYER AS FOLLOWS:

SELLER CONTINGENCY. Seller's obligations under this Agreement are conditioned upon Seller
obtaining approval of this sale from the Bankruptcy Court. This Agreement shall terminate and Buyer
shall receive a refund of the earnest money unless Seller gives written notice to Buyer within thirty (30)
days of Mutual Acceptance stating that this condition is satisfied. If such notice is timely given, this
contingency shall be deemed to be satisfied.

ALL OTHER TERMS AND CONDITIONS of the Agreement remain unchanged.

INITIALS: BUYER _____ DATE _____      SELLER _CA-_ DATE 7-13-15
         BUYER _____ DATE _____      SELLER _____ DATE _____

Westlake Associates, Inc. - Corporate, 1200 Westlake Avenue N, Ste 310 Seattle, WA 98109
Travis Kandler                                      Phone: 206-505-9423        Fax: 206-505-9439        PSA - Meter LLC -
                    Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

© Commercial Brokers Association
2011
ALL RIGHTS RESERVED

CBA Form PSA
Addendum/Amendment to PSA
Rev. 1/2011
Page 1 of 1

7/8/2015  ADDENDUM/AMENDMENT TO
PURCHASE AND SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated _____ July 7, 2015 _____
(the "Agreement"), between _____ METER LLC, a Washington limited liability company, and/or Assigns
("Buyer"), and _____ RECOVERY CENTERS OF KING COUNTY, a non-profit organization
("Seller"), regarding the sale of the Property known as: the Wright Building, 464 – 12th Avenue, Seattle, WA
98122 _____ (the "Property"),

IT IS AGREED BETWEEN THE SELLER AND BUYER AS FOLLOWS:

SELLER CONTINGENCY.  Seller's obligations under this Agreement are conditioned upon Seller
obtaining approval of this sale from the Bankruptcy Court.  This Agreement shall terminate and Buyer
shall receive a refund of the earnest money unless Seller gives written notice to Buyer within thirty (30)
days of Mutual Acceptance stating that this condition is satisfied.  If such notice is timely given, this
contingency shall be deemed to be satisfied.

ALL OTHER TERMS AND CONDITIONS of the Agreement remain unchanged.

INITIALS: BUYER __CG__ DATE _7-14-15_ SELLER __CA__ DATE _7-13-15_
         BUYER _____ DATE _____ SELLER _____ DATE _____

Westlake Associates, Inc. - Corporate, 1200 Westlake Avenue N, Ste 310 Seattle, WA 98109                    Phone: 206-505-9411        Fax 206-505-9439        PSA - Meter LLC -
Travis Kahaler                                    Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com